## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delchester Developers, L.P., : 
               Appellant : 
            : 
        v. : No. 148 C.D. 2016
            : Argued: October 17, 2016
London Grove Township : 
Board of Supervisors : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge
             HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED: May 9, 2017**


Before this Court is the appeal of Delchester Developers, L.P. (Delchester) of the December 30, 2015 order of the Court of Common Pleas of Chester County (Trial Court) affirming the July 15, 2015 denial by the London Grove Township Board of Supervisors (BOS) of Delchester's preliminary subdivision and land development plan application (Plan). Delchester has raised four issues for review, arguing that the Trial Court erred in affirming the denial of the Plan issued by the BOS because: (i) the reasons for denying the Plan were insufficiently specific contrary to the mandate of Section 508(2) of the Municipalities Planning Code[1] (MPC), 53 P.S. § 10508(2); (ii) the BOS improperly incorporated reviews of the Plan by independent consultants in its denial of the Plan; (iii) the BOS identified a failure to secure third-party permits as a basis for denial rather than issuing an approval of the plan conditioned on

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

Delchester obtaining the requisite third-party permits; and (iv) the BOS acted in bad faith by denying the Plan. For the reasons that follow, we affirm the order of the Trial Court.[2]

Section 508 of the MPC provides the procedure whereby the governing body or planning agency of a township shall review and act upon a subdivision and land development application. 53 P.S. § 10508. If the plan submitted by the applicant complies with all of the objective provisions of the applicable subdivision and land development ordinance (SALDO) as well as all other applicable regulations, the plan must be approved by the reviewing body. *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 169 (Pa. Cmwlth. 1993). Subsection 2 of Section 508 requires of the reviewing body that:

> When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

53 P.S. § 10508(2); *see also Herr*, 625 A.2d at 169. A decision rejecting a subdivision and land development plan will be voided for contravening Section 508(2) of the MPC if it fails to cite to the specific provision of the SALDO relied upon or if the reasons for rejection are vague and undiscernible. *Coretsky v. Board of Commissioners of Butler Township*, 555 A.2d 72, 74 (Pa. 1989). If the decision

---

[2] Where no additional evidence has been taken by the trial court, our scope of review is limited to determining whether the board of supervisors committed an abuse of discretion or an error of law. *Appeal of Richboro CD Partners, L.P.,* 89 A.3d 742, 746 n.1 (Pa. Cmwlth. 2014). An abuse of discretion is established where the findings are not supported by substantial evidence; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

2

complies with Section 508(2) of the MPC, then rejection of the plan will stand if even one of the reasons for denial is supported by substantial evidence. *Herr*, 625 A.2d at 169.

The July 15, 2014 decision issued by the BOS contained 44 reasons for denial of the Plan broken down into the following categories: (i) zoning ordinance provisions; (ii) groundwater protection district; (iii) SALDO; (iv) sewer and water; (v) stormwater management; and (vi) general. Delchester argues that Nos. 10, 17, 18, 28, and 29[3] are not sufficiently specific to satisfy Section 508(2) of

---

[3] The BOS's denial reasons Nos. 10, 17, 18, 28 and 29 are as follows:

> \*\*\*
> ### GROUNDWATER PROTECTION DISTRICT
> \*\*\*
> 10. Applicant failed to comply with the requirements relating to Historic Resource Protection in Part XVII with regard to the portion of the Property located in the I- Industrial District.
> \*\*\*
> ### SUBDIVISION AND LAND DEVELOPMENT ORDINANCE
> \*\*\*
> 17. Applicant has failed to demonstrate compliance with Section 612.I (formerly Section 612.A.9) relating to street system impacts.
> \*\*\*
> 18. Applicant has failed to demonstrate compliance with Section 615.12 (formerly Section 615.L) relating to recreation lands and facilities, fees -in -lieu thereof and trails.
> \*\*\*
> ### STORMWATER MANAGEMENT
> \*\*\*
> 28. Applicant has failed to demonstrate compliance with Section 303.4.B.1 (formerly Section 303.02.13) relating to identification of limits of Cockeysville Marble areas.
> \*\*\*
> 29. Applicant has failed to demonstrate compliance with Section 303.5.C.l.f (formerly Section 303.01.C.14) relating to the use of infiltration systems for sediment and erosion control with regard to the proposed detention/infiltration basin or the seepage beds.

(BOS Op., Nos. 10, 17, 18, 28, & 29.)

the MPC, and that Nos. 3, 22, 23, 31, 38, 39, 40, 41, 42, 43 and 44[4] do not cite to provisions of the Township's SALDO, also in violation of Section 508(2) of the

[4] The BOS's denial reasons Nos. 3, 22, 23, 31, 38, 39, 40, 41, 42, 43 and 44 are as follows:

ZONING ORDINANCE PROVISIONS
***
3. Applicant failed to note the proposed perimeter setback should be identified for the access road and site improvements listed on Sheets 1, 2 and 4.
***

GROUNDWATER PROTECTION DISTRICT
22. Applicant has failed to demonstrate how Applicant has addressed outstanding comments relating to water and sewer from the London Grove Township Municipal Authority.

23. Applicant has failed to demonstrate how Applicant has addressed outstanding comments regarding the Sewage Facilities Planning Module from former Township Engineer URS.

STORMWATER MANAGEMEMT
***
31. Applicant has failed to demonstrate that it has permission from adjacent property owner London Grove North LP to connect the outfall pipe for the proposed drywell to an existing storm sewer system located on the adjacent property and has failed to demonstrate that this system was designed with additional capacity to accommodate the flow from Applicant's development.
***
38. Applicant has failed to demonstrate that discharges from the proposed detention/infiltration basin into the proposed underground seepage bed will not hydraulically overload the seepage bed.

39. Applicant has failed to furnish a viable plan to demonstrate how the seepage bed will be protected from silt intrusion during construction.

GENERAL

4

MPC. 53 P.S. § 10508(2). Delchester also argues that the reasons given for denial in Nos. 1, 2, 7, 21, 24, 26, 32, 35, 36 and 44[5] were easily correctible technical

40. Applicant has failed to demonstrate that it has obtained [Pennsylvania Department of Transportation] approval for the proposed entrances and turn lane on East Baltimore Pike.

41. Applicant's [Pennsylvania Natural Diversity Inventory] correspondence from [Pennsylvania Department of Conservation and Natural Resources] has expired and applicant has failed to provide current correspondence.

42. Applicant has failed to remove General Note 21 from Sheet 1 of the plan as requested by the Township's Engineer.

43. Applicant has failed to provide the Township with evidence of abandonment of the 10 foot right of way existing on Tax Parcel # 59-5-89 or clarified the rights of the utility company mentioned in the General Notes.

44. Applicant has failed to update Note 29(26) of Sheet 1 relating to retaining walls over 4 feet in height as requested by the Township Engineer and corrected apparent typographical errors in the Note(s).

(BOS Op., Nos. 3, 22, 23, 31, 38, 39, 40, 41, 42, 43 & 44.)

[5] The BOS's denial reasons Nos. 1, 2, 7, 21, 24, 26, 35, 36 and 44 are as follows:

ZONING ORDINANCE PROVISIONS
1. Applicant has failed to demonstrate via calculations that the floor area ratios on Sheets 1, 2 and 4 meet the maximum permitted by Section 27- 1103.D.

2. Applicant failed to submit revised calculations and corrected lot size information for Sheets 1, 2 and 4 netting out all required easements as required by the definition of "Lot area, net" in Section 27 -202.
***
GROUNDWATER PROTECTION DISTRICT
7. Applicant failed to document compliance with Section 1406.7 (formerly Section 1305.H) which allows a maximum of fifty

5

percent impervious coverage for portions of the site which fall within the Groundwater Protection District ("GWPD") in tabular form on Sheet 1 of the plans as requested by the Township Engineer.

\*\*\*

## SUBDIVISION AND LAND DEVELOPMENT ORDINANCE

\*\*\*

21. Applicant has failed to demonstrate compliance with Section 502.8.A (formerly Section 501.11.2) which requires all tree and bush masses and trees with a diameter greater than 6 inches to be shown on plans by not clearly showing the limits of the existing tree masses on the Existing Features Plan and in addition, since the date of filing of the Application, Applicant has removed a significant portion of the tree mass on the Property.

\*\*\*

## STORMWATER MANAGEMEMT

**24. Applicant has failed to demonstrate compliance with Section 402.2.B.7 (formerly Section 302.01.B.1) by adding all required easements to the plan sheets and by adding notes explaining the purposes of the easements.**

**\*\*\***

**26. Applicant has failed to provide soil infiltration testing results, including field logs, required to demonstrate compliance with Section 303.3.C.3 (formerly Section 303.01.C.3).**

**\*\*\***

**32. Applicant has failed to demonstrate compliance with Section 303.5.C.1(d) relating to required approvals for removal of temporary erosion and sediment control measures by failing to include these requirements in the Sequence of Construction.**

**\*\*\***

**35. Applicant has failed to demonstrate compliance with Section 407.01.B.i relating to stormwater management easements by failing to cover all areas requiring an easement in its Post Construction Stormwater Management Plan.**

**36. Applicant has failed to provide the requested written clarification to the Township relating to accessing the property for required inspections to demonstrate compliance with Section 407.06.B relating to stormwater management easements.**

defects that are insufficient to serve as grounds for denial of the Plan. Delchester further argues that the decision issued by the BOS failed to properly incorporate the consultant letters that the BOS relied upon in support of its denial. Specifically, Delchester challenges denial reasons Nos. 11, 13, 16, 22 and 23.[6]

---

GENERAL
***
44. Applicant has failed to update Note 29(26) of Sheet 1 relating to retaining walls over 4 feet in height as requested by the Township Engineer and corrected apparent typographical errors in the Note(s).

(BOS Op., Nos. 1, 2, 7, 21, 24, 26, 35, 36 & 44 (emphasis added).)

[6] The BOS's denial reasons Nos. 11, 13, 16, 22 and 23 are as follows:

***
GROUNDWATER PROTECTION DISTRICT
***

11. Applicant failed to address Township professional consultant Taproot Native Design's review comments relating to the buffering and landscaping requirements in Section 1806 (formerly Section 1705).
***
SUBDIVISION AND LAND DEVELOPMENT ORDINANCE

13. Applicant has failed to demonstrate compliance with Section 502.5.K (formerly Section 501.E.11) relating to delineation of any freshwater wetlands by providing a determination from a qualified wetlands biologist.
***
16. Applicant has failed to demonstrate compliance with the landscaping requirements set forth in Section 502.9 (formerly Section 501.1) and failed to address review comments from the Township's landscaping consultant.
***
SEWER AND WATER
22. Applicant has failed to demonstrate how Applicant has addressed outstanding comments relating to water and sewer from the London Grove Township Municipal Authority.

7

Finally, Delchester argues that the BOS impermissibly rejected its Plan based on Delchester's failure to secure third-party permits when it was required to approve the Plan conditioned upon Delchester's receipt of third-party permits.[7]

---

> 23. Applicant has failed to demonstrate how Applicant has addressed outstanding comments regarding the Sewage Facilities Planning Module from former Township Engineer URS.

(BOS Op., Nos. 11, 13, 16, 22 & 23.)

[7] The BOS's denial reasons Nos. 14, 20, 22, 40 and 41 address third-party permits and are as follows:

> \*\*\*
> ### SUBDIVISION AND LAND DEVELOPMENT ORDINANCE
>
> \*\*\*
> 14. Applicant has failed to demonstrate compliance with Section 502.7 (formerly Section 501.G) relating to Chester County Conservation District approval of erosion and sedimentation control plans and post-construction stormwater management plans.
> \*\*\*
> 20. Applicant has failed to demonstrate compliance with Section 607.1.0 (formerly Section 606.A.5) by documenting how apparent conflicts with [Pennsylvania Department of Environmental Protection] regulations relating to the sewage planning module have been resolved.
> \*\*\*
>
> ### SEWER AND WATER
>
> 22. Applicant has failed to demonstrate how Applicant has addressed outstanding comments relating to water and sewer from the London Grove Township Municipal Authority.
> \*\*\*
>
> ### GENERAL
> 40. Applicant has failed to demonstrate that it has obtained PENNDOT approval for the proposed entrances and turn lane on East Baltimore Pike.
>
> 41. Applicant's PNDI correspondence from PA DCNR has expired and applicant has failed to provide current correspondence.

Initially, the Township argues that even if Delchester succeeded in striking down each ground for denial it has challenged on appeal, Delchester has failed to challenge nine of the bases for denial identified in the BOS decision and, as a result, the denial must be affirmed. (*See* BOS Op., Nos. 8, 13, 15, 19, 25, 27, 30, 33 & 34.[8]) In addressing Delchester's arguments regarding failure to comply

---

(BOS Op., Nos. 14, 20, 22, 40 & 41.)

[8] The BOS's denial reasons Nos. 8, 13, 15, 19, 25, 27, 30, 33 and 34 are as follows:

\*\*\*

### GROUNDWATER PROTECTION DISTRICT
\*\*\*

8. Applicant failed to provide an Environmental Assessment Report as required by Section 27 -1409 (formerly Section 1308).
\*\*\*

13. Applicant has failed to demonstrate compliance with Section 505.5.K (formerly Section 501.E.11) relating to delineation of any freshwater wetlands by providing a determination from a qualified wetlands biologist.
\*\*\*

### SUBDIVISION AND LAND DEVELOPMENT ORDINANCE
\*\*\*

15. Applicant failed to tag existing trees in excess of six inches in diameter and/or to obtain Board of Supervisors approval to remove existing trees on the CI lot as required by Section 502.8.B (formerly Section 501.H.3).
\*\*\*

19. Applicant has failed to demonstrate compliance with Section 701.6 (formerly Section 700.F) relating to protection of adjacent residential areas using methods such as extra parcel depth and/or a permanently landscaped evergreen buffer strip.
\*\*\*

### STORMWATER MANAGEMENT
\*\*\*

25. Applicant has failed to demonstrate compliance with Section 3 03.3.C.1 and 2 (formerly Section 303.01.C.1 and 2) by failing to explain why an above ground device is not feasible and by failing to demonstrate how the proposed underground [Best Management Practices] conforms to applicable Township ordinance regulations.
\*\*\*

9

with Section 508(2) of the MPC, the Township contends that it engaged in extensive discussions with Delchester over a four-year period and that despite clear direction regarding the Plan's deficiencies and how each deficiency could be corrected, Delchester failed to cure its plan. The Township argues that Nos. 10, 17, 18, 28 and 29 (*see* note 3, *supra*) are sufficiently specific independent grounds for denial, with each reason identifying a specific portion of the SALDO or other applicable ordinance that the Plan does not comply with and leaving no ambiguity regarding the deficiency that Delchester needs to cure in order to receive approval. Although the Township agrees that a subset of the reasons identified in the denial decision do not cite to the SALDO or other applicable ordinance as the basis for denial, the Township contends that these issues were identified in the decision for completeness rather than as independent grounds for denial. Furthermore, the Township argues that Nos. 24, 26, 32, 35, and 36 (*see* note 5, *supra*) are each

27. Applicant has failed to demonstrate compliance with Section 303.3.C.4 (formerly Section 303.01.C.4) relating to infiltration facility requirements by proposing a detention facility with a depth in excess of the 2 foot maximum.
***
30. Applicant has failed to demonstrate compliance with Section 303.02.C.2 which requires the bottom of infiltration BMPs to be 12' above the water table and 6' above the bedrock.
***
33. Applicant has failed to demonstrate compliance with Section 303.7.B.1 and 2 by proposing a detention/infiltration basin without establishing that other preferred methods of stormwater management as specified in the ordinance are not feasible.

34. Applicant has failed to demonstrate compliance with Section 303.7.C.2(f) relating to final design of storm sewer systems by failing to provide the required freeboard between the [Hydraulic Grade Line] and rim elevations throughout the entire storm sewer system.

(BOS Op., Nos. 8, 13, 15, 19, 25, 27, 30, 33 & 34.)

10

substantive rather than mere technical defects and that each of these grounds address the failure of the Plan to comply with the Township's Storm Water Management Ordinance (SWMO). The Township argues that the decision properly incorporated and relied upon external documents, and that Delchester was aware of the letters and the deficiencies described within. Finally, the Township argues that it included the lack of third-party permits for completeness rather than as independent reasons for denial. Furthermore, the Township contends that if Delchester's Plan had otherwise complied with the SALDO, then the precedent regarding approval conditioned upon the receipt of third-party permits would apply; the Township contends that under the circumstances of this case, the precedent regarding conditioned approval is inapplicable.

In *Shelbourne Square Associates, L.P. v. Board of Supervisors, Township of Exeter*, 794 A.2d 946 (Pa. Cmwlth. 2002), this Court reviewed a subdivision and land development plan denial where the decision of the governing body contained eight reasons for denial of the plan and concluded that seven of the reasons given were insufficient to support a denial due to vagueness and an additional subset were "defects in the plan notations and labels [that] are correctable by fairly simple amendments to the documents." *Id*. at 950. However, this Court affirmed the denial in *Shelbourne* because a single ground for denial rested on clear noncompliance with the township's SALDO and the noncompliance was an objective, legitimate, substantive planning issue. *Id*. at 952. In *Robal Associates, Inc. v. Board of Supervisors of Charlestown Township*, 999 A.2d 630 (Pa. Cmwlth. 2010), we reviewed decisional law distinguishing between defects which constituted objective, legitimate, substantive reasons for denial from those, like mere labeling issues, which could not form the basis for denial of plan

11

approval.  *Robal* held that "the following reasons are sufficient to support rejection:

> [L]ot area (as opposed to lot dimensions); stormwater requirements and grading requirements necessary for stormwater management calculations; sewage or wastewater disposal requirements; wetlands delineations; highway access; steep cross-section grades at the intersection with a public street; and, erosion and sedimentation controls.

*Id*. at 637 (footnotes omitted).

In the instant matter, the BOS decision includes mere technical deficiencies that could be easily cured by amendment as Delchester argues; however, as *Shelbourne* makes clear, the presence of inadequate independent grounds for denial does not vitiate the legitimate substantive grounds for denial identified by the BOS.  The decision identifies five specific areas where Delchester's plan failed to comply with Township ordinances applicable to the Plan: (i) Zoning Ordinance; (ii) Groundwater Protection District; (iii) SALDO; (iv) Sewer and Water; and (v) SWMO.  Within these sections, Delchester failed to object to two areas of noncompliance specific to the groundwater protection district, two issues of noncompliance with the SALDO, and five instances of noncompliance with the SWMO.  These nine grounds are sufficient to support the BOS's decision.

Yet, even if we examined only those grounds for denial which Delchester has objected to for failure to comply with Section 508(2) of the MPC, it is clear that Delchester's Plan does not comply with substantive and objective requirements of the applicable ordinances.  For example, denial reason No. 26 in

12

the BOS's decision concludes: "[Delchester] has failed to provide soil infiltration testing results, including field logs, required to demonstrate compliance with Section 303.3.C.3 (formerly Section 303.01.C.3)."[9]    (BOS Op., No. 26.) Delchester has argued that denial reason No. 26 is a mere technical defect that is an insufficient basis for denial of its plan.  In *Schultheis v. Board of Supervisors of Upper Bern Township, Berks County*, 727 A.2d 145 (Pa. Cmwlth. 1999), this Court held just the opposite, concluding that "[applicant's] Preliminary Plan application did not contain soil percolation and probe tests, wetlands delineations and erosion and sedimentation controls. Although [applicant] contends these deficiencies were minor technicalities, we must agree with the [governing body] that these deficiencies were not minor but, rather, were substantive." *Id*. at 149.  Where a preliminary plan contains clear substantive issues of noncompliance with a township's SALDO or other applicable ordinances, the governing body is within its discretion to deny the plan. *Herr*, 625 A.2d 169.

The BOS decision contained sufficiently specific grounds for denial in accordance with the mandate of Section 508(2) of the MPC; because even one legitimate basis for denial supports the BOS's decision to deny rather than grant conditional approval of the Plan, the issues of whether the BOS properly

---

[9] Section 303.3.C.3 (formerly Section 303.01.C.3) of the Township's SWMO provides:

> Soil infiltration tests shall be made to a depth of not less than three (3) feet below the bottom of the infiltration area or bed.  These tests shall follow the procedures for infiltration beds established by the Chester County Health Department.  All infiltration methods shall be designed to handle the ten (10) year storm.  Seventy five (75) percent of the tested percolation rate shall be used to determine the storage volume required.

SWMO § 303.3.C.3 (formerly § 303.01.C.3).

incorporated reviews of the Plan by independent consultants[10] or identified a failure to secure third-party permits[11] as a basis for denial rather than issuing an

---

[10] Our Supreme Court held in *Kassouf v. Township of Scott*, 883 A.2d 463 (Pa. 2005), that references to supporting documentation will provide, as a substantive matter, an adequate articulation of grounds for denial for purposes of Section 508(2) of the MPC where it is clear from the decision what supporting documentation is referenced. *Id*. at 472. In *Advantage Development, Inc. v. Board of Supervisors of Jackson Township*, 743 A.2d 1008 (Pa. Cmwlth. 2000), this Court held that a Board decision denying plan approval was sufficient under Section 508(2) of the MPC where it incorporated an engineer's report that provided specific numbered reasons for denial. *Id*. at 1013-1014. In *Kassouf*, our Supreme Court concluded that the denial decision failed to satisfy Section 508(2) of the MPC because, as distinguished from *Advantage Development*, it was unclear which external documents were being relied upon by the Board for its denial and

> The subdivision applicant should not be left to guess at whether the township was truly relying upon an external document in lieu of its own Section 508 statement. Nor should the applicant be left to guess as to which of multiple documents is the one that would serve as the "incorporated" basis for the decision. If a municipal authority indeed intends for an external document to serve as the substantive explanation of the basis for its decision, it should make that point explicitly in the decision letter, and not ask the applicant, and the court system, to infer the point.

*Kassouf*, 883 A.2d at 473. In the instant matter, the BOS decision states:

> The Township's Engineers, URS Corporation ("URS") and subsequently, Ragan Engineering Associates Incorporated ("Ragan Engineering"), reviewed the [Plan] for compliance with the applicable Township zoning, land development and stormwater ordinance provisions and issued review letters indicating how the [Plan] needed to be revised to come into compliance. True and correct copies of the URS review letter dated August 9, 2011 and the Ragan Engineering review letter dated April 7, 2014 are attached hereto as Exhibit "A."

(BOS Op. at 1.) Within the body of the decision, additional consultant letters are referenced but they are not attached to the decision as a part of Exhibit A. (*See,e.g.,* note 6, No. 11, *supra*.)

[11] Where an outside agency's approval is required, the municipality should condition final approval upon obtaining a permit, rather than denying preliminary approval of the land

14

approval of the plan conditioned on Delchester obtaining the requisite third-party permits have no bearing on the outcome of this appeal. However, Delchester has also argued that the BOS acted in bad faith by denying the Plan, in part based on the alleged failure of the Township to provide Delchester with an opportunity to cure the deficiencies in its Plan prior to review by the BOS. Delchester contends that the Township's bad faith was exemplified by its opposition to Delchester before the London Grove Township Zoning Hearing Board (ZHB) and the inclusion of several zoning issues for which Delchester sought relief before the ZHB as grounds for denial in the BOS decision prior to Delchester's ability to appeal the ZHB decision.[12] Delchester contends that the Township's bad faith

---

development application. *Morris v. South Coventry Township Board of Supervisors*, 836 A.2d 1015, 1026 (Pa. Cmwlth. 2003) (governing body properly conditioned approval of final plan upon engineer's approval of design of wastewater storage and disposal system); *Stein v. Easttown Township Board of Supervisors*, 532 A.2d 906, 912 (Pa. Cmwlth. 1987) (board erred in denying preliminary plan, rather than conditioning approval of final plan on issuance of Department of Environmental Resources permit); *Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township*, 344 A.2d 277, 282 (Pa. Cmwlth. 1975) ("To us, it would appear to be more reasonable and consistent with the mandate of Section 508(2) to condition final subdivision approval upon the issuance of this [PennDot] opening permit rather than to abort the plan at conception."). However, in *Herr* this Court made clear that "[w]hile it is true that a preliminary subdivision application looks toward an approval subject to conditions, there is nothing in the MPC or case law to suggest that conditional approval, rather than outright rejection, *must* be granted where a proposed plan fails to comply with objective, substantive provisions of a subdivision ordinance." 625 A.2d at 172 (footnote omitted). *Herr* went on to distinguish situations like absence of a third-party permit and problems with the proposed plan that are relatively minor, which counsel in favor of conditional approval, to situations "where the objections concern fundamental defects in the plan, such as failure to conform to lot size requirements of the zoning ordinance, rejection is appropriate." *Id.*

[12] Delchester specifically challenges BOS denial reasons Nos. 4, 5, 6, and 9, which are as follows:

ZONING ORDINANCE PROVISIONS

***

15

stems from the failure of Delchester and the Township to reach an agreement regarding professional consultant fees. *See* Section 503(1) of the MPC, 53 P.S. § 10503(1).

The Township argues that the timeline belies Delchester's accusation of bad faith; Delchester submitted its Plan in 2010 and the Township issued its first review letter on December 20, 2010 containing 87 comments, however, as late as the most recent review letter on April 7, 2014, only 38 of the original comments had been resolved. The Township argues that it repeatedly provided Delchester

---

4. Section 27- 1303.1.B (formerly Section 1202.A.2) requires a minimum lot size of 2 acres. The portion of the development area located at tax parcel 59-5-89 in the I-Industrial District consists of 0.89 acres and is therefore an existing nonconforming lot. A special exception is required for the use of this lot under Section 27-2107 (formerly Section 2006) and Applicant has failed to obtain the required special exception from the ZHB.

5. Section 27-202, the definition of "use, accessory" requires that accessory uses be a subordinate use to the principal use on that parcel. The driveway proposed fails to meet the requirement for an accessory use.

6. The ZHB denied Applicant's variance request from Section 27-1303.2 (formerly Section 1202.13.1) to allow the construction of the proposed internal access drive within 10 feet of the property line and Applicant therefore failed to meet the setback requirements of Section 27-1303.2 (formerly Section 1202.13.1).
***
GROUNDWATER PROTECTION DISTRICT
***
9. The proposed underground seepage bed violates the Section 1406.8 (formerly Section 1305.1) I limit relating to the hydraulic head from infiltration devices and the ZHB denied Applicant's variance request relating thereto.

(BOS Op., Nos. 4, 5, 6 & 9.)

with letters directing Delchester to move forward and setting up deadlines for the submission of specific materials, and that it continued to work with Delchester on processing the Plan even after the Township petitioned the court to assign an arbitrator to resolve the professional consultant fee dispute. The Township argues that it appeared before the ZHB to defend its ordinances, not out of bad faith, and that the BOS is under no obligation to wait for an appeal of a ZHB decision to come to finality before issuing its decision. Moreover, the Township argues that Delchester had two weeks to submit a modified Plan responding to the ZHB decision or make an application to the Township prior to the BOS's vote on the Plan.

In *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1976), this Court issued an opinion in support of an order enforcing its judgment following protracted litigation which culminated in this Court sustaining the validity of a township's designation of 1,000 acres as a unified development area. This Court held that the course of conduct of the governing body and the township following this Court's first opinion was a "prime exhibition of bad faith," and, accordingly, this Court ordered the township and the governing body to take specific action involving the approval of the developer's plan and to cease and desist from other actions intended to frustrate the developer's ability to develop its land. *Id*. at 779, 804. In the *Raum* opinion, this Court concluded that "[a] municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion."

17

*Id*. at 798. In addition, this Court held in *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009), that where a township refuses to advise an applicant on how to cure deficiencies in its plans, as well as the township's interpretations of its ordinance, the township will be found to have acted in bad faith. *Id*. at 544-545.

However, in *Abarbanel v. Solebury Township*, 572 A.2d 862 (Pa. Cmwlth. 1990), this Court held that where a municipality has reviewed plans for the development of property in good faith, has highlighted the plan's deficiencies, and has given the developer an opportunity to cure those deficiencies, the municipality will not be found to have abused its discretion in denying an application based on failures of the plan to comply with township ordinances. Further, this Court reasoned in *Abarbanel* that "similar to a municipality's duty under *Raum*, a developer has a reciprocal good faith duty to submit revised plans in a reasonable and timely manner, which will enable a municipality to comply with its duties under [Section] 508 [of the MPC] and *Raum*." *Id*. at 864. Finally, in *Herr*, this Court concluded that there was no evidence of bad faith where the applicant was given two weeks to address the deficiencies in its plan and distinguished *Raum* as a basis for finding bad faith because the deficiencies in the plan were substantive rather than the frivolous technical details cited as a basis for the rejection in *Raum*. *Herr*, 625 A.2d at 172-173.

Following review of the procedural and factual history in the instant matter, the Trial Court concluded that the Township acted in good faith by granting numerous extensions for review of the Plan and twelve waivers from the SWMO despite the fact that during the four-year pendency of the Plan before the Township Delchester failed to correct issues of noncompliance with the SALDO and other

18

applicable ordinances known to Delchester since the beginning of the process. We agree. The actions of the Township and the BOS in this matter are quite distinct from those of the governing body in *Raum* or in *Highway Materials*. The BOS repeatedly and clearly advised Delchester on how to cure the deficiencies in its Plan, both substantive and technical, as well as alerted Delchester to the information it needed from Delchester to proceed. The BOS provided Delchester with ample time within which to act. Instead, Delchester chose to continue without modifying its Plan and without providing information critical to demonstrating compliance with the applicable ordinances. Delchester's assertion of bad faith has absolutely no support in the record. *See Kassouf v. Township of Scott*, 883 A.2d 463, 476 (Pa. 2005).[13] Moreover, contrary to the "prime exhibition of bad faith" evident in *Raum*, the record here demonstrates a prime exhibition of an applicant seeking to have the applicable ordinances adapted to a plan, rather than produce a plan in compliance with the applicable ordinances.

---

[13] In *Kassouf*, the Court adopted the reciprocal good faith standard for action by governing bodies and applicants on subdivision and land use plans, concluding:

> There is no existing basis in law to suggest that a developer is entitled to infinite opportunities to address and remedy the defects in a subdivision plan. While reciprocal actions taken in good faith are required of the parties, a reciprocal good faith standard cannot simply eliminate the inherent discretionary powers of a municipality in this area. [Applicant's] plan raised multiple issues related to non-compliance with ordinances, and [applicant] was made aware of these defects on a number of occasions between July and October of 2000. That he failed to adequately address them all prior to the November 14, 2000 deadline does not establish bad faith on the part of the township in electing to act without granting him additional time to address the defects.

*Id.* at 476.

We also reject Delchester's contention that the BOS acted in bad faith by proceeding with its decision regarding Delchester's Plan prior to the completion of Delchester's appeal of the ZHB's denial of zoning relief. There is no requirement within the MPC or decisional law that the governing body of a township must await the outcome of an appeal by an applicant denied zoning relief by the zoning hearing board before issuing its decision granting or denying preliminary plan approval. Though not required to do so by law, the BOS postponed its action on the Plan to allow Delchester to seek relief from the ZHB because the lack of compliance with the Township's Zoning Ordinance was fatal to Delchester's Plan. Having failed to garner the necessary relief, Delchester did not withdraw its Plan from consideration by the BOS or attempt to modify its Plan and it was therefore acted upon by the BOS. Delchester's attempt to argue that the consequences of its inaction are attributable to the BOS's bad faith is without merit.

The order of the Trial Court is affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

20

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Delchester Developers, L.P., :
          Appellant :
           :
          v. : No. 148 C.D. 2016
           :
London Grove Township :
Board of Supervisors :

## **O R D E R**

AND NOW this 9th day of May, 2017, the order of the Court of Common Pleas of Chester County in the above-captioned matter is AFFIRMED.


                        _____
                        **JAMES GARDNER COLINS, Senior Judge**