# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linlo Governor Crossing, LLC and : 
Sheetz, Inc., : 
              Appellants : 
             :   No. 845 C.D. 2024
             : 
        v. : 
             :   Argued: April 8, 2025
Board of Supervisors of Derry : 
Township : 
             : 
        v. : 
             : 
Mary Beth Backenstose, Ronald R. : 
Blumberg and FSC Hershey PA, LLC : 
n/k/a FSC KCE Hershey PA, DST : 


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge


## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                             **FILED: May 30, 2025**

Appellants Linlo Governor Crossing, LLC and Sheetz, Inc. (Appellants) appeal from the Court of Common Pleas of Dauphin County's (Common Pleas) June 14, 2024 order. Through that order, Common Pleas affirmed Appellee Board of Supervisors of Derry Township's (Board) November 14, 2023 adjudication (Adjudication), which denied Appellants' conditional use application (Application) for a proposed mixed-use development on a Linlo-owned multi-parcel

property in Derry Township (Property). After thorough review, we affirm in part and reverse in part.

## I. BACKGROUND[1]

On June 7, 2022, Appellants filed their Application with the Board, through which they sought four interrelated conditional use approvals that would, respectively, authorize their amended master plan for the Property[2] and permit them to construct thereon a combination convenience store and gas station (Sheetz), a multifamily apartment building with commercial spaces, and a group child care facility.[3] The latter three conditional use requests were contingent upon the former, in that they could not be separately granted without conditional use approval of the amended master plan. The Board then held 16 hearings over the course of approximately a year, before denying the Application through its Adjudication on November 11, 2023.

In its Adjudication, the Board stated that it had denied the Application for five specific reasons. First, the record evidence showed that Linlo did not own or control all of the land that they proposed to develop; the Board specifically came to this conclusion regarding a portion of Sand Hill Road (a major thoroughfare) and a private alleyway, both of which Appellants intended to substantially expand and/or relocate, in order to facilitate the flow of vehicular traffic in and around the Property; second, the Sheetz would not have a canopy that included visual breaks and did not have a landscape buffer between it and the adjacent proposed apartment building;

---

[1] We draw the majority of this section's substance from the Board's Adjudication. *See generally* Adjudication, 11/12/23.

[2] The Property consists of 22 Linlo-owned parcels, as well as parts of 2 other parcels for which Linlo has entered into agreements of sale, and has a net area of 7.42 acres.

[3] The master plan also includes a medical office building, the construction of which is allowed by right. *See* Derry Twp., Pa., Zoning Ordinance § 225-205, Table 1, *as amended* (2019).

third, Appellants did not prove that traffic congestion caused by the proposed development would not severely harm public health, safety, and welfare and, in addition, did not successfully rebut objecting parties' related testimony and evidence; fourth, the evidence presented by both Appellants and objectors established that Appellants' proposed alteration and use of the aforementioned alleyway would have an abnormally negative impact upon public health, safety, and welfare; and, finally, Appellants had not established that the master development plan provided sufficient off-street parking, due to the fact that Appellants did not know the number or type of businesses that would occupy the medical office building and the residential building's commercial spaces, or the number of children who would frequent the child care facility.

Appellants responded by appealing the Board's Adjudication to Common Pleas on December 24, 2023. Common Pleas then took no additional evidence and, on June 14, 2024, affirmed the Board. This appeal to our Court followed shortly thereafter.

## II. ISSUES

Appellants present two issues for our consideration that we summarize as follows. First, Appellants assert that the Board's denial of the Application is not supported by substantial evidence and is replete with errors of law, specifically with regard to the Board's findings of fact and conclusions of law pertaining to Linlo's possession of essential ownership and control rights for both the private alleyway and Sand Hill Road; the Sheetz canopy design; the necessity of having a landscape buffer between the Sheetz and the adjacent residential building; traffic-related concerns; and the Application's compliance with the Zoning Ordinance's off-street parking requirements. Appellants' Br. at 12-26.

3

Second, Appellants assert that the Board denied Appellants' Application in bad faith. *Id.* at 26-36. According to Appellants, Derry Township staff had previously indicated that the canopy design was acceptable and had known that Appellants wished to relocate a portion of Sand Hill Road; finally, none of the Board's other denial justifications were legally or factually valid. *Id.* at 32-36.

### III. DISCUSSION[4]

Generally speaking, "[a] conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006); *see* 53 P.S. § 10603(c)(2).[5] "An applicant is entitled to a conditional use as a matter of right, unless the governing body determines that the [proposed] use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use." *In re Drumore Crossings, L.P.*, 984 A.2d 589, 595 (Pa. Cmwlth. 2009). Once the applicant has met their initial *prima facie* burden of proof, "a presumption arises the proposed use is consistent with the general welfare. The burden then shifts to objectors to rebut the presumption by proving, to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use." *Aldridge v. Jackson Twp.*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). "Mere speculation of possible harm is not sufficient, and the objectors'

---

[4] "In a land use appeal, where the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. . . . The governing body abuses its discretion when its findings of fact are not supported by substantial evidence." *Residents Against Matrix v. Lower Makefield Twp.*, 845 A.2d 908, 910 (Pa. Cmwlth. 2004) (cleaned up). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eureka Stone Quarry, Inc. v. Dep't of Env't Prot.*, 957 A.2d 337, 344 (Pa. Cmwlth. 2008) (cleaned up).

[5] Section 603(c)(2) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*.

4

burden may not be satisfied with personal opinion or bald assertions." *Brookview Solar I, LLC v. Mount Joy Twp. Bd. of Sup'rs*, 305 A.3d 1222, 1233 (Pa. Cmwlth. 2023) (cleaned up).

When dealing with a conditional use application, the Board "is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Sup'rs*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011); *accord In re Richboro CD Partners, L.P.*, 89 A.3d 742, 754-55 (Pa. Cmwlth. 2014) ("In conditional use proceedings where the trial court has taken no additional evidence, the [board of supervisors] is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony[.]"). Furthermore, the Board "may reject even uncontradicted testimony if [it] find[s] it lacking credibility." *Caln Nether Co., L.P. v. Bd. of Sup'rs, Thornbury Twp.*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). Accordingly, we may not substitute our judgment for that of the Board by making our own credibility determinations or factual findings. *In re Brickstone Realty Corp.*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001).

## A. Necessary Ownership and Control Rights

Turning to the substance of this appeal, we conclude that Appellants' ownership and control argument does not provide us with a basis for overturning the Adjudication. Appellants assert that the deeds contained in the record establish that Linlo possesses all of the necessary ownership or control rights for both the private alleyway and Sand Hill Road, and that the Board erred by concluding otherwise. Appellants' Br. at 12-15. We disagree. Per Section 225-501.58.A.2.a.i. of the Zoning Ordinance, an applicant must establish the following in order to secure approval of a master development plan conditional use application:

i. Ownership. The entire site for the Master Plan shall:

5

> a. Be owned or controlled (*i.e.* contract purchaser, ground lease, etc.) by the developer, or
>
> b. The owners of all the land shall submit a document in recordable form and in a form approved by the Township Solicitor binding all owners to comply with the Master Plan approved by the Conditional Use approval.

Zoning Ordinance § 225-501.58.A.2.a.i.

In its Adjudication, the Board determined that Appellants had failed to satisfy this requirement for four reasons. First, Derry Township controls Sand Hill Road's right-of-way. Adjudication, Discussion at 31. Second, there was no proof that Appellants had secured Derry Township's assent to relocate a portion of Sand Hill Road or that Linlo would thereafter assume title to the vacated parts of that thoroughfare. *Id.* Third, multiple deeds proffered by Appellants show that Linlo only has title in certain areas along Sand Hill Road to the right-of-way line, rather than to that route's centerline, meaning that parts of the land underneath that thoroughfare are not owned by Linlo. *Id.* at 32. Finally, there was no evidence that the property owners of the parcels adjoining the private alleyway had granted the necessary easement rights to Linlo. *Id.* at 32-33.

We find no fault in the Board's reasoning on this point. As Sand Hill Road is a public street, Derry Township "only [has] a right to use [the street's] public right-of-way for public purposes, [while] title to property abutting [the] street extends to the center of that street and is vested in the adjoining landowner." *Stark v. Equitable Gas Co., LLC*, 116 A.3d 760, 764 n.6 (Pa. Cmwlth. 2015). Thus, though Derry Township does not hold ownership rights to Sand Hill Road that would support the Board's reasoning on this point, this public easement vests Derry Township with a right of control over Sand Hill Road. That easement cannot be "modified, changed, altered, or relocated" without Derry Township's assent, which

6

the Board correctly noted was never given to Appellants. *Soderberg v. Weisel*, 687 A.2d 839, 842 (Pa. Super. 1997).[6]

Furthermore, "[t]he general rule in all such cases is[] that where a deed calls for a street . . . as a boundary, the boundary is the middle of the . . . street, and to that line the fee passes." *Cox v. Freedley*, 33 Pa. 124, 125 (1859). An exception to this rule exists, though, when "the express terms of a deed[] show, in plain and unambiguous terms, the intention of the grantor to limit the title to the side, instead of extending it to the middle of the street." *Id.* In this instance, the Board explained that "[w]hile the deeds for the lots along the southeast side of existing Sand Hill Road show these lots extending to the centerline of this road, the deeds to the lots on the northwest side of Sand Hill Road only go to the right-of-way line of the road and not to the centerline." Adjudication, Discussion at 32; *see also id.* (discussing Hearing Exs. A-3, A-4, and A-24). The record therefore contains evidence explicitly showing that some of the land underneath Sand Hill Road is not, in fact, owned by Linlo. Given this, the Board's conclusion that Linlo does not own or possess control over all of the necessary portions of Sand Hill Road is both legally correct and supported by substantial evidence.

We also conclude that the Board did not abuse its discretion by determining that Appellants had failed to prove that Linlo possesses ownership or control over the private alleyway. The Board based this determination on a note contained in the amended master plan, which provides that "[t]he right-of-way areas to the centerline of the alleyway have been conveyed to the adjoining property owners by grantior [sic] of law." *Id.* at 32 (discussing and quoting Hearing Ex. A-

---

[6] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

24). In addition, the Board stated that Appellants had "presented no competent evidence as to what this [n]ote . . . means." *Id.* Given the opaque language used in the note, as well as Appellants' failure to present evidence that would flesh out the note's meaning, we cannot conclude that the Board abused its discretion on this point.[7]

### B. Sheetz Design Issues

Moving on, Appellants next assert that the Board erred by denying the Application because the proposed Sheetz canopy did not comply with the Zoning Ordinance's requirements. Appellants maintain that the Zoning Ordinance's canopy design requirement is subjective, rather than objective, and therefore cannot be used to deny the Application. Appellants' Br. at 18-20. We agree.

"[A] key element in evaluating conditional use decisions . . . is whether requirements contained in the zoning ordinance are specific and objective or vague and subjective." *Williams Holding Grp., LLC v. Bd. of Sup'rs of W. Hanover Twp.*, 101 A.3d 1202, 1213 (Pa. Cmwlth. 2014); *see id.* at 1214 (a conditional use criterion that does not contain appropriately quantifiable standards "is so vague as to render an applicant's burden to comply impossible because of the ambiguities"). If the requirement is vague and subjective, the applicant either need not satisfy its requirements or does not have the initial burden to show compliance therewith. *Id.* In other words, a conditional use applicant need only "satisf[y] the specific, objective conditional use criteria set forth in the zoning ordinance" in order to warrant

---

[7] Appellants assert that the Board could not base its denial on the particulars of the private easement rights referenced in the amended master plan. *See* Appellants' Br. at 15-16 (citing *BR Assocs. v. Bd. of Comm'rs of Twp. of Upper St. Clair*, 136 A.3d 548, 562 (Pa. Cmwlth. 2016)). However, this ignores the fact that the Board's denial was based upon its conclusion that Appellants had failed to present *any* evidence regarding the particulars of those easement rights, *not* upon the Board's interpretation of the nature and scope of those easements.

8

approval of their application. *Aldridge v. Jackson Twp.*, 983 A.2d 247, 259 (Pa. Cmwlth. 2009).

In this instance, the Board concluded that the canopy design did not comply with Section 225-501.19.D. of the Zoning Ordinance, which mandates that "[c]anopies serving more than 8 vehicles must provide a visual break in canopy size or projection to avoid the overly simplified, unarticulated or commercial look of longer canopies." Zoning Ordinance § 225-501.19.D. The term "visual break" is not defined in the Zoning Ordinance and, thus, constitutes a vague and subjective criterion, noncompliance with which could not be used by the Board to deny the Application. *See Aldridge*, 983 A.2d at 259.[8]

This does not mean, however, that the Board's concerns regarding the Sheetz's design were completely unfounded. The Board also concluded that the Application did not comply with Section 225-501.19.E. of the Zoning Ordinance, because Appellants had failed to place a landscape buffer between the proposed Sheetz and a proposed residential apartment building. Appellants assert that this conclusion was in error, because the Zoning Ordinance requires gas stations to have landscape buffers when they are built adjacent to existing residential structures, but not when such structures have yet to be built. Appellants' Br. at 20-22.

Resolution of this issue therefore requires us to construe the relevant ordinance language, in order to determine whether the Board's reasoning was correct. We consequently turn to the principles of statutory construction, which also guide our interpretation of zoning ordinances. *Bloomsburg Indus. Ventures, LLC v. Town of Bloomsburg*, 242 A.3d 969, 979 (Pa. Cmwlth. 2020). Our primary objective is to determine the intent of the legislative body that enacted the ordinance. *Id.*

---

[8] Given this, we need not address Appellants' related argument that the canopy design complies with both the letter of the Zoning Ordinance's requirements and its intent.

9

"[Z]oning ordinances must be construed expansively so as to afford the landowner the broadest possible use and enjoyment of his land." *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014). Even so, where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921. In this regard, "we are mindful that an ordinance's plain language generally provides the best indication of legislative intent." *THW Grp., LLC*, 86 A.3d at 336. Indeed, although we must "listen attentively to what a [an ordinance] says[,] [we] must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001). To that end, we may not insert a word into an ordinance that the governing body failed to provide itself. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "An ambiguity exists when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014).

Further, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage[,]" and every ordinance shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. §§ 1903(a), 1921(a). "[A board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). We are not required to afford such deference, however, to the extent the board's interpretation conflicts with the plain language of the ordinance. *City of*

*Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 909 (Pa. Cmwlth. 2021).

As mentioned above, the relevant provision of the Zoning Ordinance is Section 225-501.19.E., which reads as follows: "Fuel service establishments adjacent to residential uses shall provide a landscape buffer consistent with this Chapter." Zoning Ordinance § 225-501.19.E. The Board concluded that this ordinance did not contain any temporal limitations on its applicability and, thus, by its plain language, applied equally where a gas station would be built next to an existing residential structure *or* a proposed residential structure. Adjudication, Discussion at 34-35. The Board found support for its interpretation through Section 225-501.19.G., which expressly imposes a minimum distance requirement upon proposed gas stations, but *only* in relation to existing residential dwellings;[9] the Board reasoned that Section 225-501.19.E. would contain comparable language if its applicability was similarly limited. *Id.* We find no fault in the Board's interpretation of Section 225-501.19.E. and, therefore, conclude that it did not erroneously deny the Application on the basis that Appellants had failed to provide the necessary landscape buffer between its proposed Sheetz and residential apartment building.

### C. Traffic-Related Concerns

Appellants next maintain that the Board erred in two ways by denying the Application on the basis of traffic-related concerns. First, the objectors failed to meet their burden of proof regarding the development's impact on nearby vehicular

---

[9] This provision reads as follows: "Buildings and structures associated with a major fuel service establishment must be located no closer than 200 feet to a building used as a dwelling which exists at the time of the establishment of the facility, unless separated from said dwelling use by an existing or proposed public street, other than an alley." Zoning Ordinance § 225-501.19.G.

11

traffic, because they failed to present any expert testimony to support their lay opinions and speculative assertions. Second, the Board arbitrarily and capriciously disregarded expert testimony regarding the development's traffic impact. Appellants' Br. at 22-25. Both of these arguments are ultimately without merit.

Per Section 225-501.58.A.2.a.iv of the Zoning Ordinance, Appellants were required to prove that the Property "provide[s] for direct points of ingress and egress in a manner to assure convenient and safe access, which will not cause undue congestion or hazards on local roads." Zoning Ordinance § 225-501.58.A.2.a.iv. Furthermore, they were also required to submit "[a] traffic impact study [(TIS)] meeting the requirements of Chapter 185, Subdivision and Land Development." *Id.* § 225-501.58.A.4.g.xiv. In other words, an applicant must submit a proper TIS in order to show that a proposed development will not create significantly disproportionate traffic issues.

The Board's analysis of these provisions, as well as Appellants' compliance therewith, is fairly confusing. At certain points in the Adjudication's Discussion section, the Board states that Appellants "had made out, what [Appellants] claimed to be, a *prima facie* case of compliance" regarding the development's traffic impact and then proceeds to declare that objectors had successfully rebutted Appellants' *prima facie* offer of proof. *See* Adjudication, Discussion at 35-40. At other points in the Discussion section, however, the Board makes clear that the proposed development does not meet the requirements of Section 225-501.58.A.2.a.iv, *independent of objectors' evidence*, as well as that Appellants' TIS is fatally flawed. *See id.*, Discussion at 38-40.

Even so, sufficient clarity is provided through other portions of the Adjudication. In its findings of fact, the Board found in relevant part that Linlo's

12

own evidence showed that trucks would not have adequate turning radii at multiple spots along the development; did not address the turning radius issue at all for one of the development's main intersections; and did not account for the fact that the private alleyway would need to be significantly widened in order to safely accommodate two-way traffic. *Id.*, Findings of Fact (F.F.), ¶¶107-11, 144-47. Additionally, the Board stated that Appellants' TIS did not address the development's effect upon certain important intersections in the vicinity or the impact of other nearby, in-construction developments; relied upon incorrect square footage measurements for one of the development's buildings; was improperly based upon traffic data that was collected both during the pandemic and at off-peak times; was incorrectly predicated upon the assumption that Appellants' development would be completed at some point in 2022; and did not take into account how the private alleyway would be affected by the proposed traffic pattern reconfigurations. *Id.*, F.F., ¶¶125-42. On those bases, the Board then concluded that Appellants had not satisfied Section 225-501.58.A.2.a.iv, as well as that Gregory Creasy, Appellants' traffic impact expert, had not provided credible testimony in support of the Application. *Id.*, Conclusions of Law, ¶¶k, q-r, aa-dd.

The Adjudication is therefore best understood contextually as a determination that approval of the Application was not warranted because Appellants had failed to show, even at a *prima facie* level, that the proposed development complied with Section 225-501.58.A.2.a.iv. This determination is supported by substantial evidence and, thus, does not constitute an abuse of discretion. *See Elizabethtown/Mt. Joy Assocs., L.P. v. Mount Joy Twp. Zoning Hearing Bd.*, 934 A.2d 759, 766 (Pa. Cmwlth. 2007) (denial of a special exception application is warranted when the application is "premised on erroneous data and

13

unfounded assumptions"); *In re AMA/Am. Mktg. Ass'n, Inc.*, 142 A.3d 923, 934 (Pa. Cmwlth. 2016) ("A conditional use is nothing more than a special exception that falls within the jurisdiction of the municipal governing body rather than the zoning hearing board.").

This also vitiates Appellants' assertion that the Board arbitrarily and capriciously disregarded expert testimony regarding the aforementioned traffic issues. "A capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. Capricious disregard of evidence is a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 814 (Pa. Cmwlth. 2005). "The express consideration and rejection of this evidence, by its definition, is not capricious disregard." *Id.* at 816. Furthermore, a decision is not arbitrary as long as the governing body issues a decision in which it provides necessary findings of fact and conclusions of law, as well as "sufficient rationale to demonstrate that its action was reasoned[.]" *Allied Servs. for the Handicapped, Inc. v. Zoning & Hearing Bd. of the City of Scranton*, 459 A.2d 60, 61 (Pa. Cmwlth. 1983). In this instance, the Board did not arbitrarily or capriciously disregard evidence, as it clearly considered the traffic-related testimony provided by Appellants' expert witness, rejected that testimony as unreliable, and provided a detailed explanation for how and why it found that testimony to be incredible.

### D. Off-Street Parking

Next, Appellants maintain that the Board erroneously concluded that the Application did not comply with the Zoning Ordinance's parking requirements, because Appellants did not need to identify the development's specific tenants to

14

accurately calculate the number of necessary off-street parking spaces. Appellants' Br. at 25-26. We agree.

Per Section 225-501.58.A.7.e. of the Zoning Ordinance, a master plan development applicant may satisfy the relevant off-street parking requirements by "propos[ing] shared parking by agreement of the users in accordance with [Section] 225-402.4. [of the Zoning Ordinance]." Zoning Ordinance § 225-501.58.A.7.e; *accord id.* § 225-501.58.A.4.g.ii (similar language regarding shared parking agreements). In turn, the relevant portions of Section 225-402.4.B.-C. read as follows:

> B. By-Right use. Cumulative parking requirements for a property containing multiple uses may be reduced where it can be determined that the peak requirements of the several uses on a single lot occur at different times in accordance with the Shared Parking Demand Chart (Appendix B.1 & B.2). Off-street paid parking and off-street time-limited parking may be included in shared parking.
>
> C. Conditional use. The . . . Board . . . may permit shared parking as a conditional use for sharing land uses over several lots within a Master Plan Development area . . . . The purpose of shared parking is to minimize the land area dedicated to parking, thereby freeing up scarce land for economically and publicly beneficial activities. The conditions for this type of shared parking are set forth in [Section] 225-501.42.

*Id.* § 225-402.4.B.-C. Appendices B-1 and B-2 list shared parking demand figures for a multitude of uses on a per-hour basis between 7:00 a.m. and 12:00 a.m., while Section 225-501.42 furnishes detailed instructions regarding the creation and implementation of shared parking agreements. *See id.* § 225-501.42, App. B-1 and B-2.

However, none of these provisions mandate that shared parking can only be calculated based upon the specific tenants that will occupy the buildings

15

within a master plan development. It stands to reason, then, that an applicant may satisfy the Zoning Ordinance's parking mandates by providing an amount of off-street parking that is equal to, or greater than, the maximum aggregate number of shared spaces required for the actual or potential uses within the development. The Board's far narrower interpretation of the Zoning Ordinance therefore cannot stand. *City of Clairton*, 246 A.3d at 909

Under other circumstances, the Board's error would necessitate a remand, so that it could make factual findings regarding Appellants' related assertion that their Application provides for more than the maximum aggregate number of off-street parking spaces. That is not the case here because, as already discussed, the Board provided other, independent reasons that legally and factually justified its denial of the Application. Accordingly, the Board's determination that the Application failed to comply with the Zoning Ordinance's parking requirements is, at most, rooted in harmless error.

### E. Bad Faith

Finally, even assuming *arguendo* that Appellants preserved their argument that the Board had acted in bad faith by denying the Application, it remains that Appellants' bad faith claim is nevertheless without merit. Again, Appellants base this argument on two assertions: first, Derry Township staff had previously indicated that the Sheetz canopy design was acceptable and knew throughout the process that Appellants wished to relocate a portion of Sand Hill Road, and, second, none of the Board's other, specific justifications for denying the Application were valid. Appellants' Br. at 32-36.

It is true that a governing body must act in good faith when considering and adjudicating all land use applications, including those pertaining to conditional

16

uses. *Brookview Solar*, 305 A.3d at 1237. This duty of good faith includes the requirement that a municipality "discuss[] matters involving technical requirements or ordinance interpretation with an applicant, and provid[e] an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion." *Raum v. Bd. of Sup'rs of Tredyffrin Twp.*, 370 A.2d 777, 798 (Pa. Cmwlth. 1976). Therefore, in instances "[w]here a township refuses to advise an applicant on how to cure deficiencies in its plans, as well as the township's interpretations of its ordinance, the township will be found to have acted in bad faith." *Delchester Devs., L.P. v. London Grove Twp. Bd. of Sup'rs*, 161 A.3d 1106, 1116 (Pa. Cmwlth. 2017). However, a municipality does not act in bad faith where the relevant body's objections to a plan are substantive, rather than technical, and the applicant was given a reasonable opportunity to correct the highlighted defects prior to the municipality's denial of the plan. *Herr v. Lancaster Cnty. Plan. Comm'n*, 625 A.2d 164, 171 (Pa. Cmwlth. 1993).

In this instance, Appellants' bad faith argument fails for several reasons. First, as discussed above, the Board provided multiple substantive reasons for denying the Application that were entirely separate from its disposition of the canopy design and road relocation issues, specifically with regard to Linlo's lack of necessary ownership and/or control rights to the alleyway and Sand Hill Road, the absence of a landscape buffer between the proposed Sheetz and adjacent residential structure, and traffic-related concerns. Notably, Appellants do not assert that Township staff or the Board misled them into believing that the Application adequately addressed those three specific concerns. Thus, even if (a) Township staff made comments that misled Appellants regarding the canopy design and road relocation issues; (b) those comments could be imputed to the Board; and (c) such

17

behavior rose to the level of bad faith, it would not change the fact that the Board's disposition of the Application was wholly justified on other, untainted bases.[10]  In other words, even if we were to accept as true Appellants' assertion that the Board acted in bad faith about the design of the Sheetz canopy and the relocation of Sand Hill Road, that specific bad faith would not warrant overturning the broader Adjudication because of the Board's independent explanations for its denial.  *See Delchester*, 161 A.3d at 1113 ("[T]he presence of inadequate independent grounds for denial does not vitiate the legitimate substantive grounds for denial identified by the [Board.]"); *cf. Shelbourne Square Assocs., L.P. v. Bd. of Sup'rs, Twp. of Exeter*, 794 A.2d 946, 951 (Pa. Cmwlth. 2002) (a single legitimate reason is sufficient to justify denial of land use application where development in accordance with the underlying plan is contingent upon the deficient design feature).

Second, the mere fact that the Board abused its discretion or committed errors of law in certain parts of the Adjudication does not, *ipso facto*, mean that those abuses or errors were committed in bad faith.  "The orderly administration of government requires that courts assume that persons holding responsible public positions act in good faith, until the contrary is clearly shown."  *Glesenkamp v. City of Pittsburgh*, 181 A. 763, 765 (Pa. 1935).  As Appellants do not even claim to have such clear evidence regarding the Board's remaining abuses of discretion and errors of law, there is no basis for concluding that those abuses and errors were made in bad faith.[11]

---

[10] By Appellants' own admission, the Board was not required to follow recommendations made by Township staff.  Appellants' Br. at 35-36.  Therefore, Appellants tacitly recognize that favorable comments made by Township staff could not create a binding guarantee that the Board would ultimately approve the Application.

[11] We note that Common Pleas failed to address Appellants' assertion that the Board had acted in bad faith.  *See generally* Common Pleas Op., 6/14/24; Common Pleas Op., 7/29/24.  We

# IV. CONCLUSION

In accordance with the foregoing analysis, we reverse Common Pleas' June 14, 2024 order in part, to the extent it affirmed the Board's denial of the Application because (a) the Sheetz canopy design did not comply with the Zoning Ordinance's requirements, and (b) Appellants had not established that the master development plan provided sufficient off-street parking. We otherwise affirm Common Pleas' order. *See In re Cutler Grp., Inc.*, 880 A.2d 39, 48 (Pa. Cmwlth. 2005) (affirming in part and reversing in part lower court order affirming municipal body's denial of conditional use application, because only some of the justifications provided by that body were legal and factually valid).


_____
**LORI A. DUMAS, Judge**

---

nevertheless decline to remand this matter to Common Pleas, because our resolution of this issue obviates a need for factual findings regarding whether the Board indeed acted in bad faith, as well as because remand under these circumstances will only serve to pointlessly delay final resolution of this litigation. *See, e.g.*, *Hainsey v. Pa. Liquor Control Bd.*, 602 A.2d 1300, 1307 (Pa. 1992) (it is "a waste of judicial economy" to remand to lower tribunal when there is no chance that issue to be addressed on remand could ultimately change a matter's outcome); *Downes v. Unemployment Comp. Bd. of Rev.*, 456 A.2d 1107, 1108 (Pa. Cmwlth. 1983) (declining to remand matter to administrative tribunal because "[t]he facts before this Court are clear and consequently a remand would not be conducive to administrative or judicial economy").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Linlo Governor Crossing, LLC and Sheetz, Inc., | : | |
| Appellants | : | |
| | : | No. 845 C.D. 2024 |
| v. | : | |
| | : | |
| Board of Supervisors of Derry Township | : | |
| | : | |
| v. | : | |
| | : | |
| Mary Beth Backenstose, Ronald R. Blumberg and FSC Hershey PA, LLC n/k/a FSC KCE Hershey PA, DST | : | |

# **O R D E R**

AND NOW, this 30th day of May, 2025, the order entered by the Court of Common Pleas of Dauphin County (Common Pleas) on June 14, 2024, is REVERSED IN PART, to the extent that Common Pleas affirmed the Board of Supervisors of Derry Township's November 14, 2023 denial of Appellants Linlo Governor Crossing, LLC and Sheetz, Inc.'s (Appellants) conditional use application on the following bases: (a) the gas station canopy design did not comply with the Derry Township Zoning Ordinance's requirements, and (b) Appellants had not established that the master development plan provided sufficient off-street parking. Common Pleas' order is otherwise AFFIRMED.

_____
**LORI A. DUMAS, Judge**