IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Serluco d/b/a    :
Consolidated Properties,     :
              :
       Appellant  :
              :
    v.        : No. 1239 C.D. 2020
             : Submitted: September 23, 2021
Borough of Camp Hill     :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge[1]
      HONORABLE MICHAEL H. WOJCIK, Judge (P.)
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK         FILED: April 13, 2022


    Michael Serluco d/b/a Consolidated Properties (Applicant) appeals from the order of the Cumberland County Court of Common Pleas (trial court) that affirmed the decision of the Borough Council of the Borough of Camp Hill (Borough Council and Borough, respectively) that denied Applicant's preliminary/final subdivision and land development application (SALDO Application). Applicant sought to consolidate seven properties and develop a Chick-fil-A fast food restaurant with a drive-thru window, on the corner of 32nd Street and Chestnut Street in the Borough. While the appeal was pending, Applicant filed an application for remand based on after-discovered evidence in the form of an affidavit from the former

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

Borough manager, alleging that the Borough conspired to thwart approval of the SALDO Application in an illegal private meeting.

Applicant presents four questions for our review: (1) whether Borough Council abused its discretion or erred when it denied Applicant's SALDO Application; (2) whether the trial court erred when it found that Borough Council acted in good faith regarding Applicant's SALDO Application; (3) whether Borough Council abused its discretion in rejecting Applicant's request for a waiver of the requirement for a preliminary plan under the Borough's Subdivision and Land Development Ordinance (SALDO);[2] and (4) whether the case should be remanded to the trial court to consider after-discovered evidence of Borough Council's bad faith.[3] After careful review, we affirm the trial court's decision, and deny Applicant's remand request.

## I.

The relevant facts, which are not in dispute, describe the lengthy and complex history of this matter, and were summarized by the trial court as follows. Applicant is the owner of seven contiguous parcels totaling 1.39 acres, located on the southeast corner of the intersection of Chestnut Street and South 32nd Street, also known as U.S. Route 15, in the Borough (the Property). The six westernmost parcels are in the Borough's General Commercial Zoning District (GC District) in which a restaurant is a permitted use. The easternmost seventh parcel is in the Borough's Low Density Residential Zoning District (LDR District), in which a

---

[2] Borough of Camp Hill, Pa. Subdivision and Land Development Ordinance (SALDO)(1993).

[3] Per this Court's July 30, 2021 Order, Applicant's application for remand and the Borough's answer will be considered with the merits of the appeal.

restaurant is not a permitted use. The Property would thus be split-zoned. The Property includes land that is encumbered by private alley easements. Applicant proposed using the north-south "alley" (north-south alley) on the eastern side of the Property for vehicular ingress/egress from and onto Chestnut Street, which would be significantly widened for traffic. There is also an east-west "alley" along the southern border of the Property (east-west alley) which would not be used for access to South 32nd Street, although Applicant proposed using this alley for emergency vehicle access using a "mountable curb." Trial Court 10/30/2020 Opinion at 2-3 (Trial Court Opinion).

Applicant began discussing its plan with Borough staff in 2017, after which Applicant purchased a small piece of land at the intersection from the Borough, which gave Applicant ownership of the entire Property. Reproduced Record (R.R.) at 40a-49a. On June 7, 2018, Applicant submitted sketch plans to the Borough. *Id.* at 56a-59a. Applicant and the Borough were aware that the Property was split-zoned, and understood that the Borough would either have to rezone the parcel in the LDR District, or Applicant would request a variance. The Borough Planning Commission (Planning Commission) considered Applicant's sketch plans at a November 2018 meeting, where members expressed concern about increased traffic in the area from the proposed development. *Id.* at 76a-82a, 84a. Applicant submitted its initial preliminary/final SALDO Application on December 4, 2018, (December 2018 Plan), which included the required Borough application; filing fees; Cumberland County application for review; the SALDO plans with sheets 1-14; the request to waive the SALDO requirement for a preliminary plan; and a stormwater narrative and calculations. Applicant sought to waive the requirement for a preliminary plan and to essentially consolidate its preliminary and final plans

3

because "[t]he project involves the redevelopment of land in a commercial corridor, with existing supporting infrastructure already in place. No new streets or significant utility improvements are needed." *Id.* at 85a-161a.

Although not on the agenda, some members of the public provided negative comments about the project, particularly regarding traffic, at the Borough Council meeting on December 12, 2018, and at a community meeting with Applicant the next day. R.R. at 141a-46a. An engineering company engaged by the Borough (Borough engineer) reviewed the December 2018 Plan and provided a report dated December 14, 2018, with 5 zoning comments and 22 SALDO comments. R.R. at 147a-49a. Although the Planning Commission was expected to consider the December 2018 Plan at its December 18, 2018 meeting, the review was postponed at Applicant's request. *Id.* at 150a. Nevertheless, members of the public expressed negative comments about the project at this meeting. *Id.* at 150a-59a. The Cumberland County Planning Department issued its report dated December 20, 2018, observing that the plat appeared to generally comply with applicable regulations, but that revisions may be required to address several substantive issues including parking in the LDR District; the need for a Traffic Impact Study (TIS); issues with the design of the drive-thru facilities; the proposed use of the north-south alley as the main entrance/exit; and some additional traffic concerns. *Id.* at 180a-82a.

At the January 15, 2019 Planning Commission meeting, members of the public again expressed negative comments about the project, and the Planning Commission recommended accepting Applicant's offer to extend the deadline for Borough action by 60 days. R.R. at 191a-221a. At that meeting, the Borough solicitor publicly stated that the Borough was required to act in good faith, and that

4

the extension would give the Borough more time to review the project, so that it would not run afoul of the time limits for review set forth in Section 508 of the Pennsylvania Municipalities Planning Code (MPC).[4]  *Id.* at 194a.  At its February 13, 2019 meeting, Borough Council accepted Applicant's 60-day extension to allow for more time to review the  plan.  At that time, Applicant had not yet submitted the TIS, and legal issues concerning the alleys were still not resolved.  *Id.* at 222a-25a, 227a-32a.

Applicant submitted a revised Preliminary/Final SALDO Application on February 27, 2019 (February 2019 Plan), which attempted to address the comments from the Borough engineer and Cumberland County, and again included the waiver request.  Applicant eliminated parking in the LDR District in response to the County's concern, addressed some other issues, and proposed submitting a TIS to the Borough for review within the next week.  Applicant offered other revisions regarding stacking spaces for the drive-thru and the use of the north-south alley. R.R. at 233a-339a.  On February 28, 2019, Borough Council issued a public statement that the Borough was required to work with Applicant to review and address any deficiencies in the project, to act in good faith, and to review the forthcoming TIS, so that the Borough could make a fair and responsible decision. *Id.* at 369a.  On March 1, 2019, Applicant submitted the TIS to the Borough, to which the Borough engineer expressed a number of concerns related to the north-south alley, parking and pedestrian concerns, and the impact of the project on the

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10508.  Section 508 of the MPC provides, in relevant part, that Borough Council must render its decision on the SALDO Application "not later than 90 days" after its regular meeting following the date that the application was filed.  *Id.*  If the next regular meeting occurs more than 30 days following the filing, the "90-day period shall be measured from the 30th day following the day the application has been filed." *Id.*  If Borough Council fails to render a timely decision, the application shall be "deemed an approval" unless the applicant has agreed in writing to an extension.  *Id.*

already busy intersection.  *Id.* at 340a-62a, 370a-73a.  On March 13, 2019, the Borough retained special counsel to assist in its review of Applicant's SALDO Application.  *Id.* at 376a-81a.  The Borough engineer provided comments to Applicant's February 2019 Plan in a report dated March 15, 2019, which made recommendations regarding a lot merger agreement, review by local emergency services, paving, and a drainage easement.  In this report and in its earlier report, the Borough engineer took no exceptions to granting the preliminary plan waiver as "there was no regulatory benefit to the Borough" in requiring separate submissions. *Id.* at 382a-84a.

Applicant presented its February 2019 Plan to the Planning Commission at its March 19, 2019 meeting.  At this meeting, two Commission members questioned whether the Property would be treated as a "corner lot," which would require two fronts, a side, and a rear for purposes of setbacks and other requirements.  Applicant's counsel responded that although Applicant and Borough staff discussed this issue early in the process, he believed that the front of the Property would be on South 32nd Street, which was the Property's street address. Applicant's counsel indicated that Applicant would submit TIS revisions at a future meeting, and members of the public again expressed negative comments about the project.  R.R. at 387a-428a.  Because Applicant needed more time for revisions, it advised the Borough that it would present the plan at the May 2019 Planning Commission meeting, and it agreed to another extension until June 12, 2019, for the Borough to act on the plan.  *Id.* at 432a-35a.

On May 13, 2019, the Borough solicitor advised Applicant's counsel that the Borough zoning officer was reviewing several zoning issues in connection with the February 2019 Plan, including measurement of the front yard setbacks, rear

yard setback, drive-thru location, the use of the north-south alley as an access drive for commercial use, and documentation for a fence easement outside the east-west alley. When Applicant's counsel objected to what he perceived as a delay for these zoning comments, the Borough solicitor responded that these zoning comments were in response to recommendations from the Planning Commission and in response to the revised February 2019 Plan. R.R. at 436a-39a.

On May 15, 2019, the Borough zoning officer's written opinion was forwarded to Applicant's counsel for review. In it, the Borough zoning officer advised that a corner lot must have two front lot lines; the front yard setbacks were not properly measured and must be measured from the street right-of-way line; the building canopy and building were not permitted within the front yard setbacks; the drive-thru facilities were not permitted within the front yard setbacks or facing an abutting property in the LDR District; the rear yard setback was not properly measured; the north-south alley could not be used for commercial purposes in the LDR District; and no documentation for the fence easement outside the east-west alley had been received. R.R. at 440a-41a. On May 27, 2019, Applicant's counsel advised the Borough zoning officer that Applicant was in the process of revising its plan based upon review comments, and it agreed to extend the deadline for Borough action to September 11, 2019. *Id.* at 446a. On June 12, 2019, Borough Council again approved an extension to September 11, 2019, as had been recommended by the Planning Commission, overruling negative public comments. *Id.* at 460a-64a.

On July 30, 2019, Applicant submitted to the Borough an updated TIS, crash analyses and a revised Preliminary/Final SALDO Application (July 2019 Plan), which contained sheets 1-16 and a revised stormwater narrative and calculations. R.R. at 465a-518a. Applicant's transmittal letter for the July 2019 Plan

7

included responses to the March 15, 2019 Borough engineer's report, and certain zoning and pedestrian information. Importantly, the transmittal letter advised that the site layout had been adjusted to provide front yard setbacks for both South 32nd Street and Chestnut Street, based on existing building setbacks for adjacent properties. Applicant indicated that the July 2019 Plan included a one-half-foot-front setback on South 32nd Street, and a 16.5-foot-front setback on Chestnut Street. *Id.* at 471a-72a.

In a separate memorandum to Borough counsel, Applicant's counsel explained that the proposed front yard setbacks were based on Section 732.B of the Zoning Ordinance,[5] which permits front yard setbacks to be reduced from the 35-foot front yard setback required in Section 503 of the Zoning Ordinance, so that the setback is similar to existing adjacent buildings and the street right-of-way on abutting lots. Applicant's counsel also questioned the split-zoning issue and the Borough zoning officer's comments regarding commercial use of the north-south alley. Applicant's counsel described the north-south alley as "split-zoned along its centerline," with the western portion in the GC District and the eastern portion in the LDR District. R.R. at 527a. Applicant's counsel stated that zoning regulations should not apply to the north-south alley because it is a street, and, if they did apply, they could not prohibit the use of the alley to access the proposed restaurant. *Id.* at 519a-33a.

On August 19, 2019, in response to Applicant's July 2019 Plan, the Borough zoning officer reported to the Planning Commission, in which he confirmed that the Property was a corner lot, with front yards on South 32nd Street and Chestnut

---

[5] Borough of Camp Hill, Pa., Zoning Ordinance of 2015, *as amended.* The full Zoning Ordinance is included in the Original Record (O.R.) at Item 23. The relevant sections of the Zoning Ordinance are included in the Reproduced Record at 702a-34a.

Street, with the address on South 32nd Street. The Borough zoning officer questioned whether the north-south and east-west alleys should be considered streets, and, if so, the lot lines should coincide with the right-of-way lines for the streets/alleys. Based on this measurement, the required rear yard setback would be 30 feet, and the side yard setback would be 12 feet. The zoning officer also questioned whether the proposed front yard setbacks were properly calculated, based on the definition of "lot lines" in the Zoning Ordinance and the SALDO.[6] R.R. at 553a-54a. Also, on August 19, 2019, the Borough engineer provided reports to the Borough commenting on the updated TIS and the July 2019 Plan. The Borough engineer commented that the updated TIS addressed many of the earlier concerns, but that some remained inadequately addressed, including traffic flow in the intersection and perpendicular parking spaces along the north-south alley. *Id.* at 548a-56a. In its more general response to the July 2019 Plan, the Borough engineer commented on stormwater review, paving, requirements for the fence and drainage easements, and several other suggestions for Applicant to make technical adjustments on its drawings. *Id.* at 544a-47a.

Applicant again agreed to extend the deadline for Borough action on the July 2019 Plan to facilitate review of the comments and to revise the plan accordingly. R.R. at 555a. At its August 20, 2019 meeting, the Planning Commission recommended approving the extension and again received negative comments about the project from members of the public. *Id.* at 557a-85a. On

---

[6] Camp Hill Borough Subdivision and Land Development Ordinance of 1993, *as amended*. The full SALDO is included in the Original Record at Item 23, and the relevant sections are included in the Reproduced Record at 735a-64a. The Borough enacted an amended SALDO effective December 2020, replacing the 1993 SALDO, which does not apply to this appeal. The amended SALDO may be found at https://cms8.revize.com/revize/camphillborough/Departments/Code%20Enforcement-Zoning/CHB%20FINAL%20SALDO%20120920.pdf (last visited 4/12/22).

9

August 29, 2019, the Borough zoning officer amended his report to respond more accurately to Applicant's July 2019 Plan, in which he addressed designation of front, side, and rear yards; setbacks for side and rear yards; conformity of streets under the Zoning Ordinance and the SALDO; front yard setbacks on Chestnut Street and 32nd Street; commercial use of driveways; and the updated TIS. *Id.* at 643a-45a. On September 5, 2019, the Pennsylvania Department of Transportation commented on the updated TIS, in which it raised a concern about the unaligned accesses to the Property from Chestnut Street, and about the traffic patterns in the intersection. *Id.* at 650a-51a. Applicant again offered to extend the deadline for Borough action on the plan until December 11, 2019, to facilitate its submission of another revised plan to the Borough by October 22, 2019. Applicant's counsel expressed frustration at receiving new zoning comments at this stage in the process. *Id.* at 655a-56a. At its September 11, 2019 meeting, Borough Council approved the extension to December 11, 2019, to facilitate submission of Applicant's revised plan by October 22, 2019. *Id.* at 657a-60a.

On October 22, 2019, Applicant's counsel informed the Borough solicitor that Applicant would not submit a revised plan or a revised TIS. R.R. at 662a. On November 15, 2019 Applicant sent a "litigation hold" letter to the Borough, seeking preservation of all documents relating to the SALDO Application. *Id.* at 668a-73a. Applicant stated his belief that the Borough's review of the SALDO Application had not been objective or in good faith. *Id.* at 665a-67a. At its November 19, 2019 meeting, at which members of the public again presented negative comments about the project, the Planning Commission voted to recommend denial of the July 2019 Plan, and denial of Applicant's waiver request. Applicant did not attend this meeting. *Id.* at 674a-87a.

10

At its December 11, 2019 meeting, Borough Council voted to deny the July 2019 Plan and to deny Applicant's waiver request. R.R. at 688a-95a. The Borough issued a written denial dated December 19, 2019, in which it enumerated 33 reasons for the denial, with citations to the Zoning Ordinance or the SALDO. *Id.* at 696a-701a. As the trial court noted, several of the reasons for denial are "technical in nature and would not normally rise to the level of irremediable, fatal defects in the plan," but also that Applicant declined to submit a revised plan to address those technical defects. Trial Court Opinion at 49. The trial court also noted that several reasons for denial were substantive in nature, focusing on lot lines, setbacks, unrestricted access from the lot along the length of the north-south alley, and deficiencies in the TIS. *Id.* at 49-52.

Applicant appealed Borough Council's December 19, 2019 decision to the trial court. The trial court took no additional evidence and upheld Borough Council's decision in an opinion and order dated October 30, 2020, which comprised some 65 pages and over 200 footnotes. The trial court addressed the following issues: whether Borough Council's denial of Applicant's waiver request violated required timelines and resulted in a deemed approval; whether Borough Council acted in good faith; and whether Borough Council's reasons for denial of the July 2019 Plan were legally sufficient. The trial court concluded that Borough Council had not abused its discretion in denying Applicant's waiver request; Borough Council acted in good faith; and Borough Council's denial of the July 2019 Plan was legally sufficient because there were several substantive provisions of the Zoning

11

Ordinance and the SALDO that Applicant failed to meet. Applicant timely appealed the trial court's decision to this Court.[7]

## II.

As to the first issue, whether Borough Council's denial was justified, Applicant argues that each of the 33 reasons Borough Council provided was factually inaccurate, ignored details of the plans, or was based on erroneous interpretations of the Zoning Ordinance or the SALDO. Applicant claims that some of the 33 reasons rely on inconsequential, administrative, or technical matters that are remediable and should not be grounds for denial. Although the trial court specifically discussed in detail only certain reasons, Applicant seeks a determination from this Court that none of the reasons justify denial of its SALDO Application, so that Applicant would not be bound in any future plan submissions on undecided issues or be barred from raising them in a later proceeding. The Borough responds that so long as Borough Council's decision complies with the requirements of Section 508 of the MPC to specify the defects, describes the requirements that have not been met, and includes citations to the statute or ordinance upon which it relied, the denial will stand if even one of the reasons for denial is supported by substantial evidence.

We note that when a plan complies with all "objective provisions" of the applicable ordinance or regulation, the plan must be approved. However, denial of a plan may stand if validly supported by even one reason for denial. *Herr v.*

---

[7] When, as here, the trial court took no additional evidence, this Court's standard of review is to determine whether Borough Council abused its discretion or erred as a matter of law. *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1121 n.3 (Pa. Cmwlth. 2017). On the issue of whether Borough Council acted in good faith, this Court's standard of review is to determine whether the trial court abused its discretion or erred as a matter of law. *1050 Ashbourne Associates, LLC v. Cheltenham Township Board of Commissioners*, 167 A.3d 828, 837 (Pa. Cmwlth. 2017).

*Lancaster County Planning Commission*, 625 A.2d 164, 168-69 (Pa. Cmwlth. 1993) (citations omitted). Here, Applicant has not argued that Borough Council's decision failed to comply with the requirements of Section 508 of the MPC. Therefore, we need not determine if each reason is sufficiently supported by the record if we find that at least one reason, based on objective standards, justifies Borough Council's denial. We further note that the party seeking approval of a land development plan bears the burden to show it is entitled to approval, *Ball v. Montgomery Township Board of Supervisors*, 598 A.2d 633, 637 (Pa. Cmwlth. 1991), and that the Borough is entitled to deference in interpreting its ordinances. *Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).

Borough Council denied the July 2019 Plan because Applicant failed to provide a metes and bounds description of the proposed easements for a driveway, fence, and drainage onto adjacent property owned by 133 South 32nd Street, LLC, nor did Applicant provide proof of the right to construct these facilities on the adjacent property, as required by Section 407.1.A.(2) and (5) of the SALDO. R.R. 696a-710a, reasons 1, 2, 6, 9, and 23. Applicant argues that Section 407.1.A.(2) and (5) of the SALDO does not require inclusion of a metes and bounds description, and that any disputes between private property owners over an easement are private matters between the owners and may not justify a land use denial. Applicant further argues that Section 407.1.A of the SALDO applies to review and approval of a final plat (or plan, as defined in the SALDO), and because the Borough failed to waive submission of a preliminary plan, it cannot now deny it based on Section 407.1.A. The Borough responds that although Applicant promised to provide confirmation of its right to construct these improvements, it failed to do so, and never provided certification of title or a detailed description of these proposed easements. Section

13

407.1.A of the SALDO requires that for approval of a final plat, an applicant must provide: "(2) [t]ract boundary lines, right-of-way lines of streets, easements, and other rights of way . . . with accurate dimensions"; and "(5) [c]ertification of title showing that the applicant is the owner of land, agent of the landowner or tenant with permission of the landowner." SALDO §407.1.A(2), (5).

We agree with the trial court that Borough Council did not abuse its discretion or commit an error of law when it denied the July 2019 Plan based on Applicant's failure to properly describe the proposed driveway, fence, and drainage easements. Section 407.1.A(2) of the SALDO requires that the final plat or plan show easements with "accurate dimensions," and Section 407.1.A(5) requires "certification of title" that the applicant has title as owner, agent, or tenant to use this property. We agree that Applicant must assert at least a colorable claim to develop driveway, fence, and drainage easements onto the adjacent property, which Applicant did not. The July 2019 Plan, and the earlier versions, contained Applicant's promise to provide this information, but Applicant failed to do so. Because Applicant failed to meet these objective requirements of the SALDO, reasons 1, 2, 6, 9, and 23 provide valid reasons to deny the July 2019 Plan.

Borough Council also denied the July 2019 Plan because it failed to depict lot lines and setbacks as required by the Zoning Ordinance. Specifically, Borough Council concluded that Applicant failed to depict the required 30-foot rear yard setback from the right-of-way lines of the north-south alley, as required by Table 5-3 of the Zoning Ordinance, and as "lot line" is defined in Section 202 of the Zoning Ordinance. Borough Council also concluded that Applicant failed to depict the required 12-foot side yard setback from the right-of-way lines of the east-west alley for the same reasons. R.R. at 696a-701a, reasons 24-27.

14

Applicant argues that Borough Council erred in interpreting the Zoning Ordinance to determine that the July 2019 Plan did not include required lot lines and setbacks. This issue turns on the relevant definitions in Section 202 of the Zoning Ordinance. "Lot line" is defined as "[a] line that separates a lot from another lot or from a street or any public or private space." R.R. at 705a. "Setback" is defined as "[t]he required horizontal distance between a required setback line and an abutting lot line or street right-of-way line, as applicable." *Id.* at 707a. "Street line/right-of-way line" is defined as "[a] line defining the edge of a street right-of-way and separating the street from an abutting property or lot." *Id.* at 709a. Under this definition the "street line" shall be the same as "the legal right-of-way line, or the ultimate right-of-way line." *Id.* In addition, Section 202 of the Zoning Ordinance defines "street" to include an "alley" which is defined as a "minor way, which may or may not be legally dedicated, and is used primarily for vehicular service access to the rear or side of properties abutting on a street." *Id.* Applicant argues that Borough Council erred in prioritizing one definition of lot line over another. Applicant claims that the Zoning Ordinance permits measurement of the rear yard setback from the lot line in the east, and the side yard setback from the center line of the east-west alley. In contrast, the Borough responds that the lot lines, and thus the rear and side yard setbacks, must be measured from the right-of-way lines of each proposed alley, not including the space *within* each proposed alley, as if they, too, were part of the Property.

Based on our review of the relevant language of the Zoning Ordinance, we conclude that the Board did not abuse its discretion or err as a matter of law when it denied the July 2019 Plan for failing to meet the required rear yard and side yard setback requirements, using the right-of-way lines for each proposed alley. We

15

cannot conclude that the Board erred by not choosing Applicant's preferred definition of lot line when the plain language of the Zoning Ordinance includes "or" in the definition. Because Applicant failed to meet these objective requirements of the Zoning Ordinance, reasons 24-27 provide valid reasons to deny the July 2019 Plan.

Borough Council also denied the July 2019 Plan because it would allow unrestricted access from the Property along a street or alley. R.R. at 696a-701a, reasons 12 and 29. The July 2019 Plan shows a row of perpendicular parking spaces along the north-south alley, and includes 50 feet of vertical curbing to direct vehicular traffic onto the site and to define parking areas. This curbing restricts access along part, but not all, of the length of the proposed north-south alley. This issue turns on our interpretation of Section 902.D of the Zoning Ordinance, which governs driveways and access drives, and states that "[i]n no case shall there be unrestricted access from a lot along the length of a street or alley." *Id.* at 731a.

Applicant argues that the July 2019 Plan does not allow unrestricted access along "the entire" length of the north-south alley because 50 feet of its length is restricted by curbing. The Borough responds that the plain language of Section 902.D of the Zoning Ordinance prohibits unrestricted access "along the length" of the alley, and that the July 2019 Plan violates this requirement.

We agree with the trial court that Borough Council did not err in its interpretation of Section 902.D of the Zoning Ordinance. As the trial court observed, the purpose of this requirement is "obviously to prevent the chaotic situation that would result from vehicles moving onto and off streets at innumerable points along a site's frontage." Trial Court Opinion at 60. Because Applicant failed to meet these

16

objective requirements of the Zoning Ordinance, reasons 12 and 29 provide valid reasons to deny the July 2019 Plan.

## III.

As to the second issue, Applicant argues that Borough Council abused its discretion when it denied Applicant's request to waive the requirement for a preliminary plan.[8] This issue turns on the requirements for plan submissions under Sections 403, 404 and 901.1 of the SALDO. Section 403 of the SALDO provides that for a "minor subdivision and land development application" defined as one where "five (5) or fewer lots are proposed to be subdivided . . . or transferred," Borough Council "being advised by the Planning Commission, in response to a written request by the [a]pplicant, may waive the requirements of Preliminary Plat requirements, provided such proposal is on an existing street and no new streets are involved." R.R. at 747a. Section 404 of the SALDO governs requirements for filing and rendering a decision on preliminary plats. *Id.* at 748a-49a. Section 901.1 of the SALDO provides:

> Borough Council may grant a modification of the requirements of one (1) or more provisions of this Chapter [SALDO] if the literal enforcement will exact undue hardship because [of] peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of this Chapter [SALDO] is observed.

R.R. at 764a.

---

[8] Although Applicant argued before the trial court that Borough Council's failure to waive the preliminary plan requirement resulted in a deemed approval, Applicant does not argue the deemed approval issue before this Court. Therefore, we focus only on the waiver issue, as presented.

17

Applicant correctly argues that the Borough engineer advised several times that he had no objections to granting Applicant's waiver request. However, as the Borough responds, it is Borough Council, not the Borough engineer or any other Borough staff, that has the authority to grant or deny such waivers. Applicant further argues that the trial court erred in concluding that the Borough did not abuse its discretion in denying the waiver request, because Applicant elected not to make a presentation to the Planning Commission for the July 2019 Plan, and because Applicant failed to submit a revised plan to address the Borough's concerns. The Borough responds that neither the July 2019 Plan nor any of the earlier versions qualify for submission under Section 403 of the SALDO as a "minor subdivision and land development application" because more than five lots, namely seven lots, are to be transferred for this project. Further, the Borough notes that the July 2019 Plan is not a minor subdivision under Section 403 of the SALDO because new streets, in the form of the expanded north-south alley, are proposed as part of the project. The Borough also contends that Applicant failed to demonstrate that the submission of a preliminary plan "will exact undue hardship because [of] peculiar conditions pertaining to the land" under Section 901.1 of the SALDO. Finally, the Borough submits that granting such waivers is at Borough Council's discretion, as evidenced by the use of "may" in Section 901.1 of the SALDO.

We agree that Applicant's failure to appear at the final Planning Commission meeting or to submit another revised plan are not reasons to deny its waiver request under the SALDO. However, based on the plain language of the applicable SALDO sections, we cannot conclude that Borough Council abused its discretion in denying this waiver. The July 2019 Plan does not qualify as a minor subdivision under Section 403 of the SALDO because it proposes transfer of more

than five lots, and it includes a new street, in the form of the expanded north-south alley. Further, Applicant failed to provide evidence that its waiver request should be granted based on undue hardship caused by peculiar conditions of the land, as contemplated under Section 901.1 of the SALDO. Based on the plain language of the applicable SALDO provisions, we cannot conclude that Borough Council abused its discretion in denying Applicant's waiver request.

**IV.**

As to the third issue, Applicant argues that the trial court committed an error of law when it found that Borough Council acted in good faith in denying the July 2019 Plan. To determine whether Borough Council acted in good faith, we must examine relevant case law that discusses a municipality's duty of good faith. This Court has established that a municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. "'The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with the applicant, and providing the applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.'" *Delchester Developers, L.P. v. London Grove Township Board of Supervisors*, 161 A.3d 1106, 1115-16 (Pa. Cmwlth. 2017) (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977)).

Applicant argues that Borough Council, the Planning Commission, Borough zoning officer, Borough engineer, other Borough staff, Borough solicitor and special counsel engaged in actions designed to thwart its ability to meet the legal requirements necessary for approval. Applicant asserts the following as evidence of

19

the Borough's bad faith: Borough zoning officer withheld comments for eight months after the December 2018 Plan was filed; Borough changed and added new comments repeatedly throughout the process; Borough inaccurately and unreasonably interpreted its ordinances; Borough inaccurately cross-referenced comments within comment letters to create confusion; Borough applied its Zoning Ordinance and SALDO to Applicant differently than other applicants; Borough applied overlay provisions of the Zoning Ordinance, which were not enforceable; and Borough repeatedly created new hurdles that Applicant had to overcome to appease public opposition.

The Borough responds that this Court has provided additional guidance in what constitutes good faith in reviewing land development plans. In *Delchester*, 161 A.3d at 1116, this Court reviewed relevant case law including *Raum*, 370 A.2d 777, *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009), *Arbanel v. Solebury Township*, 572 A.2d 862 (Pa. Cmwlth. 1990), and *Herr*, 625 A.2d 164, to further outline what constitutes good faith and bad faith in the review process. In *Highway Materials*, this Court held that when a municipality refuses to advise an applicant on how to cure plan deficiencies, and refuses to advise an applicant on its interpretations of its ordinances, the municipality will be found to have acted in bad faith. 974 A.2d at 545. In *Arbanel*, this Court held that where a municipality reviewed plans in good faith, highlighted the plans' deficiencies, and gave the applicant an opportunity to cure those deficiencies, the municipality did not act in bad faith. 572 A.2d at 865. Further, in *Arbanel*, this Court held that an applicant has a reciprocal good faith duty to submit revised plans in a reasonable and timely manner so that the municipality can comply with its duties under Section 508 of the MPC. *Id.* at 864. Finally, in *Delchester*, this

Court held that the municipality acted in good faith by granting numerous extensions at the applicant's request, and by granting waivers, although the applicant failed to correct issues of noncompliance with relevant ordinances during the four-year review process. 161 A.3d at 1116. The Borough also notes that "there is no requirement that the members of the municipal governing body leap with joy when an application for land development or subdivision approval is filed," citing Robert S. Ryan, *Pennsylvania Zoning Law and Practice*, §11.2.8 (revised July 31, 2007).

The trial court cited six factors against concluding that the Borough acted in bad faith to frustrate or delay Applicant's approval. First, the Borough affirmatively transferred a parcel of land to Applicant so that the entire Property could be developed. Second, the Borough tried to accommodate Applicant's idea that the Property was a non-corner lot, until it became clear that under its Zoning Ordinance the Property was a corner lot. Third, as public opposition to the project increased, Borough Council issued a public statement describing the Borough's duty to act in good faith, and Applicant's right to receive a fair review in compliance with objective standards. Fourth, the Borough solicitor issued a similar public statement at a public meeting. Fifth, Borough Council granted every deadline extension Applicant requested. Finally, "the record evidences a conscientious effort" by Borough officials and consultants to "properly resolve complex legal and practical issues presented by a controversial development plan that was significantly reconfigured" during the review process. Trial Court Opinion at 56.

After review of the record and applicable case law, we cannot conclude that the trial court erred in finding that the Borough acted in good faith. The first five factors cited by the trial court demonstrate the Borough's good faith. As to the sixth factor, there is ample evidence in the record demonstrating that the Borough,

21

its staff, and consultants provided detailed comments and reactions to the December 2018 Plan, the revised February 2019 Plan, and the revised July 2019 Plan. The question of whether the Property was a corner lot under the Zoning Ordinance was not resolved until sometime after the Planning Commission's March 2019 meeting, after which Applicant submitted its revised July 2019 Plan describing the Property as a corner lot, to which the Borough zoning officer provided comments on the requirements for the corner lot and other issues in his August 29, 2019 letter. Factors that this Court has found to demonstrate bad faith are not present here, including failing to confer with Applicant, failing to grant extensions, failing to consider Applicant's revisions, waiting until the last possible moment to raise objections and then claiming there was insufficient time to review Applicant's revision, or attempting to delay consideration of a project so that a zoning ordinance could be amended. *See Raum*, 370 A.2d at 799; *Highway Materials*, 974 A.2d at 544-45; and *Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611, 621-22 (Pa. Cmwlth. 2016).

## V.

As to the fourth issue, while this appeal was pending, Applicant requested that this Court remand the matter to the trial court to take additional evidence regarding the Borough's bad faith, and to issue a decision. Applicant attached to its request an affidavit from Patrick Dennis, who was Borough manager from March 2016 through October 2020, while the Borough was considering Applicant's SALDO Application. (Dennis affidavit).

In his affidavit, Mr. Dennis states that Borough Council held a private meeting in January or February 2019, at which a quorum of Borough Council

22

members was present, to discuss the SALDO Application, public opposition to it, and "conspired to ensure that the review of the [SALDO] Application would be as difficult as possible so as to preclude the [SALDO] Application's approval, including having discussions about hiring special counsel for the Borough specifically to identify and pursue reasons to challenge the [SALDO] [A]pplication." Dennis affidavit ¶¶10, 11. Mr. Dennis stated that Borough Council engaged in discussion of the SALDO Application and hiring special counsel, "against [his] admonition." *Id.* ¶11. Mr. Dennis further stated that on May 15, 2019, the Borough solicitor and special counsel, whom the Borough retained on March 13, 2019 to assist in its review of Applicant's SALDO Application, provided a draft memorandum from Borough zoning officer to Applicant's counsel, which was not Borough zoning officer's "work product." *Id.* ¶15. Mr. Dennis further attests that Borough Council members "further conspired" to prepare and fast-track a Zoning Ordinance amendment that would preclude the construction of a drive-thru restaurant on the Property, and that a draft amendment was prepared. *Id.* ¶¶18, 19. The affidavit is silent as to whether a Zoning Ordinance amendment was ever introduced or approved. Regardless, the Borough's denial of Applicant's July 2019 Plan cited to provisions of the Zoning Ordinance and the SALDO in effect in December 2019, which did not preclude construction of a drive-thru restaurant on the Property.

The Borough responds that this Court should deny Applicant's remand request because the Dennis affidavit does not provide after-discovered evidence that the Borough acted in bad faith. The Borough claims that the Dennis affidavit seeks to "imply some undisclosed ill-will by the Borough or certain (unnamed) officials" toward the project. Borough's Answer ¶10. The Borough further submits that this

23

Court should disregard the "florid characterizations" regarding illegal, secret meetings where Borough Council members allegedly conspired to thwart the SALDO Application, and consider the facts contained in the Dennis affidavit. *Id.* ¶11. The Borough contends that the facts alleged in the Dennis affidavit reveal what was already known and considered by the trial court, namely that Borough Council held an executive session to discuss retaining special counsel, which is a permitted reason to meet in executive session, that Borough Council interviewed candidates, that it retained special counsel in a public meeting, that special counsel worked with Borough solicitor to review the SALDO Application, and that Borough Council issued a decision denying it. The Borough further responds that bad faith does not turn on the subjective desires of Borough Council members, but on its actions and the denial decision.

After review of the Dennis affidavit and the parties' arguments, we deny Applicant's remand request. Section 1005-A of the MPC[9] permits the trial court to hold a hearing to receive additional evidence and to remand a case to the body whose decision has been appealed. Applicant cites *Quest Land Development Group, LLC v. Zoning Hearing Board of Lower Heidelberg Township*, 934 A.2d 686 (Pa. 2007), to support its contention that remand is appropriate for consideration of after-discovered evidence. In its *per curiam* order in *Quest*, our Supreme Court cited *Brannagan v. Great Atlantic & Pacific Tea Company*, 41 A.2d 869 (Pa. 1945), for the standard for evaluating after-discovered evidence. In *Brannagan*, our Supreme Court stated:

> To entitle a defendant to a new trial on this ground (after-discovered evidence) the evidence must have been discovered since the trial, and be such as could not have

---

[9] Added by the Act of July 21, 1988, *as amended*, 53 P.S. §11005-A.

24

been obtained at the trial by the use of reasonable diligence; it must not be simply corroborative or cumulative, or merely to impeach the credibility of a witness; and it must be such as would likely result in a different verdict if a new trial were granted.

41 A.2d at 870 (citation omitted).

In *Kensington South Neighborhood Advisory Council v. Zoning Board of Adjustment of Philadelphia*, 471 A.2d 1317, 1320 (Pa. Cmwlth. 1984), this Court denied a remand request on the issue of whether hardship existed to justify a variance, stating that "[a]ppellant has failed to allege that new evidence, not previously available, exists which would warrant a remand. We will not issue a remand merely to strengthen weak proofs." Here, the Dennis affidavit proffered by Applicant is cumulative and corroborative of the evidence the trial court already considered. Remand is not warranted to "strengthen weak proofs." *Id.*

Further, although not raised by the parties, Applicant's remedy to what it describes as the Borough Council's illegal, private meeting is found in Section 703 of the Sunshine Act, 65 Pa. C.S. §703, which requires that a legal challenge to a meeting that was not open may not be "commenced more than one year from the date of said meeting." Here, Applicant challenges Borough Council's private executive session that was held in January or February 2019, and its application for remand was filed on July 12, 2021, well outside the one-year limitation.

25

## VI.

For all of the foregoing reasons, we affirm the trial court's order and deny Applicant's request for remand.

_____
MICHAEL H. WOJCIK, Judge

Judge Wallace did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Serluco d/b/a     :
Consolidated Properties,     :
    :
        Appellant   :
    :
    v.      : No. 1239 C.D. 2020
    :
Borough of Camp Hill     :

# **O R D E R**

AND NOW, this 13th day of April, 2022, the order of the Cumberland County Court of Common Pleas dated October 30, 2020, is AFFIRMED. The Application for Remand of Michael A. Serluco d/b/a Consolidated Properties is DENIED.

_____
MICHAEL H. WOJCIK, Judge