IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chris Haring,                          :
                                       :
          Appellant                    :
                                       :
          v.                           : No. 731 C.D. 2023
                                       : Argued: May 7, 2024
Newberry Township                      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                   FILED: July 15, 2024


          Chris Haring (Applicant) appeals from the order of the Court of
Common Pleas of York County (trial court) that denied Applicant's appeal and
upheld the decision of the Newberry Township (Township) Board of Supervisors
(Board) to deny Applicant's preliminary subdivision and land development plan
(SALDO Application) to consolidate four parcels and develop a 301,000-square foot
(SF) building (Building) at the intersection of Culhane Road and Sipe Street in the
Township (Property).  Applicant raises two issues on appeal:  whether the trial court
erred when it concluded that substantial evidence supported the Board's denial of
the SALDO Application, and whether the trial court erred when it concluded the

Board did not act in bad faith when it denied Applicant's SALDO Application. After careful review, we affirm.

The relevant facts, which are not in dispute, and as summarized by the trial court, are as follows. Applicant is the equitable owner of four parcels at the intersection of Culhane Road and Sipe Street in the Township, totaling approximately 33 acres. The Property is in the Township's Residential/Commercial Office District (RCO District) in which certain light industrial uses are permitted by right.[1] Trial Ct. Op. 6/19/23, at 2, 15.[2]

On September 14, 2020, Applicant submitted its initial SALDO Application to the Township, proposing a light industrial use as defined in Section 209.2.E.1.b. of the Zoning Ordinance,[3] and proposing to develop the Building on the

---

[1] Newberry Township, Pa., Zoning Ordinance of 2006, *as amended* (Zoning Ordinance). *See* Reproduced Record (R.R.) at 2069a-71a.

[2] The trial court's August 18, 2023 opinion is attached to Applicant's brief. In its opinion, the trial court reaffirmed its order and memorandum opinion filed on June 19, 2023. Unless indicated otherwise, the pages cited refer to the trial court's June 19, 2023 memorandum opinion, totaling 25 pages, attached to, and made part of the trial court's August 18, 2023 opinion.

[3] Section 209.2.E.1.b. of the Zoning Ordinance states:

> 1. Permitted by Right
>
> * * * *
>
> b. Light industrial uses including manufacturing, assembling, converting, finishing, processing, packaging, storage, wholesaling and repair (where applicable) of the following:
>
> 1) Agricultural, food and kindred products but excluding:
>   a) Breweries and distilleries.
>   b) Pickling processes.
>   c) Rendering or slaughtering operations.

**(Footnote continued on next page…)**

2

Property.  Reproduced Record (R.R.) at 34a-539a.  Applicant did not specify, and still has not specified, the specific light industrial use he intends for the Property, explaining that he does not have a specific tenant or buyer lined up for the Property.

---

d) Sugar refineries.

2) Furniture & Fixtures.

3) Printing, publishing and allied industries.

4) Pharmaceuticals, toiletries, medicinal, drug and biologic products.

5) Professional, scientific and controlling instruments and equipment.

6) Photographic & optical goods.

7) Fabricated metal products and metal working.

8) Woodworking, cabinets and handicraft products.

9) Electronic and small parts assembly and repair, including small household appliances.

10) Machinery and Equipment.

11) Plastics molding.

12) Tool and die.

13) Sales, storage and/or wholesaling of the following:
   a) Nursery and garden materials and stock.
   b) Contractor supplies.
   c) Home Improvement.
   d) Plumbing, heating, air conditioning, electrical and other structural components of buildings.

14) Waste Handling Facilities.

R.R. at 2146a-47a.

3

Appellant's Brief at 4. Applicant assured the Board and the trial court that he would only engage in light industrial uses permitted in Section 209.2.E.1.b of the Zoning Ordinance. Appellant's Brief at 4-5, Trial Ct. Op. 6/19/23 at 5. In the SALDO Application, Applicant described the proposed Building as a "301,000 SF warehouse." R.R. at 301a. Applicant included several reports with his SALDO Application, including water and sewer planning and a traffic impact study (TIS). In the sewer planning report, the project is described as follows: "The site is intended to be developed as a future warehouse and would require construction of associated infrastructure. Construction activities have not taken place at this time." *Id.* at 320a. In the TIS the project is described as a "warehouse building" and a "warehouse development." *Id.* at 377a, 379a. The TIS calculated the traffic impact for the project as follows:

> The trip generation equations for the proposed warehouse [were] obtained from the *Trip Generation Manual,* 10th edition, an Institute of Transportation (ITE) Informational Report. The statistics in the Trip Generation Manual are empirical data based on more than 4,800 trip generation studies. The data are categorized by Land Use Codes, with total vehicular trips for a given land use estimated using independent variable and statistically generated rates or equations.
>
> For the proposed warehouse development, Land Use Code 150 (Warehousing) from the *Trip Generation Manual* was used to calculate the number of vehicular trips the development will generate . . . .

R.R. at 384a. The TIS included tables to calculate "truck trips generated for the proposed warehouse development," and new trips "generated by the proposed warehouse development," along with other traffic components. *Id.* at 384a, 385a. A diagram of the project included the Building, in which 10,000 square feet were

4

designated for office space, with the remaining 290,000 square feet designated for the proposed warehouse, and included 51 truck docks, 69 trailer spaces, and 279 auto parking spaces. *Id.* at 47a.

The Township Engineer reviewed the SALDO Application and offered comments in a letter dated September 29, 2020. R.R. at 542a-46a. Most relevant here are comments under the Zoning and Subdivision sections of the response. Under the Zoning section, the Township Engineer provided:

> 1. The proposed use must be clearly defined under the Area and Bulk Regulations. Based on the parking calculation it appears that the plan proposes warehousing and wholesale trade. However, the permitted use is Light Industrial in the RCO Zone (209.1E).
>
> 2. Revise parking calculation for that light industrial use. (512.6). One employee on each of the two (2) largest shifts, or (1 space) per employee and at least (1 space) per each one thousand (1,000) square feet of gross floor area, whichever is the greatest number. Are there enough ADA [Americans with Disabilities Act, 42 U.S.C. §§12101-12213] spaces being provided?

R.R. at 542a. Under the Subdivision[4] section of the response, the Township Engineer addressed the sewage flows on the Property as follows:

> 1. Planning module or exemption must be approved by the Township and DEP [Pennsylvania Department of Environmental Protection] (611.01). Provide []DEP code

---

[4] Newberry Township, Pa., Subdivision and Land Development Ordinance of 2006 (SALDO Ordinance). *See* R.R. at 1855a-2068a. Section 611.01 of the SALDO Ordinance provides that a "Sewer Facilities Plan Revision (Planning Module for Land Development)[,] or Supplement, is required, approval from the PA DEP [Pennsylvania Department of Environmental Protection] shall be required prior to condition of Final Plan Approval." R.R. at 1968a. Section 403.01.f of the SALDO Ordinance requires that "[f]inal Studies and Reports in accordance with Section 402 and 403.01.4 of [the SALDO] Ordinance" be submitted with the SALDO Application. R.R. at 1922a-23a.

number referencing the approved planning module (403.01.f). Planning module that was submitted states that the proposed use is warehousing. The permitted use for this zone is light industrial. Revise sewage flows based on the permitted proposed uses.

*Id.* at 543a. The Township Planning Commission reviewed the initial SALDO Application and provided comments in a letter dated October 15, 2020. *Id.* at 547a-49a. Relevant here, the Planning Commission included the following zoning comment: "Specify the type of industrial use (s.209.2.E.1). Warehousing and wholesale trade is not a permitted use in the [] RCO[] District." *Id.* at 548a.

On October 26, 2020, Applicant submitted a revised SALDO Application that included Applicant's response to the Township Engineer's comments. R.R. at 550a-1023a. In response to the Township Engineer's first comment in the Zoning section, Applicant responded that "[t]he Parking Requirements Table on Sheet 13 has been revised to show calculations for Light Industrial." *Id.* at 550a. In response to the Township Engineer's second comment in the Zoning section, Applicant responded that "[t]he parking calculation has been revised for light industrial use and additional parking spaces have been added to meet the requirement (See Sheet 13-14). Refer to revised design and Parking Requirements [t]able on Sheet 13." *Id.* In response to the Township Engineer's comment in the Subdivision section, Applicant stated that "[t]he planning mailer has been updated to note the use is a light industrial building, but this does not affect the proposed sewage flowrates as the same number of employees are proposed. Revised planning mailer is attached." *Id.* at 551a. In response to the Township Planning Commission's comment, Applicant stated that "[t]he proposed use is Light Industrial. The table on Sheet 01 and the Parking Table on Sheet 13 [have] been updated to show this use." *Id.* at 555a. However, the TIS submitted with the revised

6

SALDO Application continued to describe the project as a "proposed warehouse development" and continued to use "Land Use Code 150 (Warehousing)" from the *Trip Generation Manual* to calculate vehicle trips. *Id.* at 854a, 861a, 862a, 870a.

The Township Engineer reviewed the revised SALDO Application and offered comments in a letter dated November 5, 2020. R.R. at 1024a-27a. Under the Subdivision section, the Township Engineer again responded that "[p]lanning module or exemption must be approved by the Township and DEP (611.01). Provide []DEP code number referencing the approved planning module (403.01.f). Provide sewage calculations for review to verify the proposed sewage flows. Provide reference to planning module approval [number] on the cover sheet." *Id.* at 1024a. Applicant responded to the Township Engineer's comments in a letter dated December 11, 2020. *Id.* at 1029a-32a. Applicant responded to the Subdivision comment using the same language as he did before. *Id.* at 1029a. During this time period, Applicant requested, and the Township agreed, to an extension of time to allow the parties to continue to discuss the project. The deadline for the Township to act on the SALDO Application was extended to April 30, 2021. *Id.* at 1028a, 1033a. Also, during this time period, Applicant sought to amend the Zoning Ordinance to include "warehouse" as a conditional use in the RCO District. The Township denied Applicant's amendment on January 11, 2021. *Id.* at 1034a-35a. At a public hearing on January 26, 2021, the Township received public comments regarding the SALDO Application, most of which were in opposition to the project. *Id.* at 1036a-42a.

On March 29, 2021, Applicant submitted a second revised SALDO Application, which included Applicant's request for waivers for a preliminary plan and for slope requirements. R.R. at 1043a-1326a. The Township Engineer

responded to the second revised SALDO Application in a letter dated April 7, 2021. *Id.* at 1327a-30a. Under the Subdivision section, the Township Engineer again responded that the planning module for sewer usage must be approved by the Township and DEP and must provide a DEP code number referencing the approved planning module, and requested "additional justification" for the "sewer flows provided on the mailer." *Id.* at 1327a. The Township Engineer also noted that "[t]he existing [TIS] references a warehouse, and the plan is referencing an industrial use." *Id.* at 1329a. The Township Planning Commission considered the second revised SALDO Application and declined to approve it, and both of the two waivers sought by Applicant. *Id.* at 1334a-35a.

On April 23, 2021, Applicant submitted a third revised SALDO Application, including responses to the Township's earlier comments. R.R. at 1344a-1630a. In a letter of the same date, Applicant's counsel withdrew Applicant's request to waive approval for a preliminary/final plan and elected to proceed through preliminary plan approval. R.R. at 1337a-42a. Applicant also requested that the Township grant a slope waiver, and schedule a public hearing to consider the third revised SALDO Application, and offered the Township an extension until June 23, 2021, to act on the plan.[5] *Id.* Applicant provided the following response to the Township Engineer's comment in the Subdivision section regarding the sewer planning module.

---

[5] *See* Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202. Section 508(3) of the MPC, 53 P.S. §10508(3), provides, in relevant part, that the Board must render its decision on the SALDO Application "not later than 90 days" after its regular meeting following the date that the application was filed. *Id.* If the next regular meeting occurs more than 30 days following the filing, the "90-day period shall be measured from the 30th day following the day the application has been filed." *Id.* If the board fails to render a timely decision, the application shall be "deemed an approval" unless the applicant has agreed in writing to an extension. *Id.*

8

The []DEP code number will be provided on Sheet 01 once obtained. The sewage calculations use 5 gallons per day [(GPD)], the proposed light industrial use more closely reflects the conditions of a warehouse as there will be no water usage for manufacturing. The estimated number of employees is expected to be a [maximum] of 150; 150 x 5GPD = 750 GPD.

*Id.* at 1344a.

Under the Transportation section, Applicant responded to the comment regarding the TIS as follows:

TPD [Traffic Planning and Design, Inc., which prepared the TIS] continues to maintain that the definition provided by ITE for "Warehousing" (Land Use Code 150) more closely matches the allowable uses identified in the Township's RCO [D]istrict, and therefore, is more appropriate for usage as trip generation in the [] (TIS). The ITE definition for Light Industrial (Land Use Code 110) indicates that the emphasis is on activity other than manufacturing, such as printing, material testing, or data processing equipment. By contrast, the RCO [District] specifically allows wholesaling, processing, packaging and storage which are traditionally associated with warehousing (and more closely matches the ITE warehousing definition).

However, based on conversations with the Township Engineer (and to provide a highly conservative estimate for trip generation), TPD has agreed to modify the TIS to utilize the ITE's Land Use Code 110 (Light Industrial) for trip generation and analysis. TPD is in the process of updating the TIS to specifically reflect/analyze ITE's Light Industrial data, and an updated TIS will be provided under separate cover. It is anticipated that the change will increase the automobile trip generation but decrease the truck trip generation. It is also anticipated that the change will have no effect on the conclusions reached by the TIS.

R.R. at 1347a.

9

The Township Engineer responded to the third revised SALDO Application in a letter dated April 27, 2021. R.R. at 1631a-34a. Under the Subdivision section, the Township Engineer again responded that the planning module for sewer usage must be approved by the Township and DEP and must provide a DEP code number referencing the approved planning module, and requested "additional justification" for the "sewer flows provided on the mailer." *Id.* at 1631a. Under the Transportation Improvements section, the Township Engineer noted that "[t]he existing [TIS] references a warehouse, and the plan is referencing industrial use. [A]pplicant has indicated that [he] will submit a revised [TIS] regarding the warehouse but has not completed [it] as of the date of this review." *Id.* at 1633a. At its April 27, 2021 public meeting, the Board considered and denied Applicant's offer of an extension, denied the SALDO Application, and authorized the Township solicitor to send a formal denial letter to Applicant. *Id.* at 1638a-39a.

On April 28, 2021, the Township sent a formal denial of the SALDO Application to Applicant, comprised of findings and reasons for the denial, and incorporating numerous exhibits attached to the decision. R.R. at 1644a-1854a. The Board's explanation for rejecting Applicant's extension request was as follows:

> [A]pplicant requested a time extension to allow submission of revised plans. The Board [] did not act on the request because it is deemed moot by the plan denial. The plans have been pending for over seven months so [A]pplicant has had adequate time to review and correct any deficiencies. Moreover, the Board believes that several of the deficiencies cannot be corrected by [A]pplicant and, therefore, additional time will not result in compliance. [A]pplicant's landscape architect has also stated in correspondence that [A]pplicant will not comply with certain requirements regarding Culhane Road and the intersection of Culhane Road and Sipe Road because those improvements are considered off-site by [A]pplicant.

10

*Id.* at 1644a.

Regarding Applicant's third revised SALDO Application, the Board stated as follows:

> The Board notes [A]pplicant submitted a set of revised plans now labeled "preliminary" on April 21, 2021, just six days ahead of the Board [] meeting. Section 306.06 of the SALDO [Ordinance] provides that "[p]reliminary plans must be submitted not less than ten (10) calendar days prior to the regular Board [] meeting at which consideration is desired, in order to be placed on the agenda." Despite the re-submission being less than ten (10) days prior to the Board meeting, the Township has reviewed and considered the plan in good faith. A revised [Township E]ngineer comment letter was provided to [A]pplicant ahead of the Board meeting on April 27, 2021. Because the revised plan does not correct numerous of the technical deficiencies that existed in prior plans, those deficiencies continue to exist on the re-submitted plans, and because [A]pplicant has stated in [his] correspondence that [he] will not address certain of the key traffic deficiencies, the Board has determined that it made a good faith effort to consider the re-submitted plans and does not believe additional time will result in plans that comply fully with the SALDO [Ordinance].

R.R. at 1644a-45a.

In the Zoning section, the Township denied the SALDO Application for its failure to specify the type of light industrial use as required by Section 209.2.E.1.b, stating that "[w]arehousing and wholesale trade is not a permitted use in the [RCO District]." R.R. at 1645a. The Board concluded as follows:

> The [P]roperty is located in the RCO District. The plans provide for "Industrial Use" as the proposed use of the building to be constructed on four parcels merged into a single 33.04-acre site along Culhane Road (the "property" or "site"). The plan lacks any specifics regarding the proposed industrial use, but [A]pplicant has made multiple

11

prior attempts to develop the property as a warehouse use and the Board has legitimate concerns [that] this is merely a new attempt at the same goal of warehousing.

[A]pplicant originally sought a rezoning of the [P]roperty to the Industrial (I) district. The York County Planning Commission by letter dated October 18, 2018, recommended not to approve the rezoning for multiple reasons, including that it was not consistent with the future land use map of the Township's comprehensive plan. The York County Planning Commission letter is attached hereto and incorporated into this decision. The Board [] conducted a hearing on the proposed rezoning on November 13, 2018. Several residents appeared at the public hearing to testify against the rezoning. The Board [] later during the regular Township meeting unanimously denied the rezoning request. The minutes of the November 13, 2018 meeting are attached and incorporated into this decision as Exhibit "C".

[A]pplicant next sought a text amendment to the [Z]oning [O]rdinance that would have permitted a warehouse of limited size in the RCO [D]istrict if certain road conditions were met to ensure adequate ingress and egress to Interstate 83. The proposed text amendment resulted from meetings with Township staff. Township staff provided comments by letter dated January 8, 2021 from [] the Township [] [E]ngineer, and by letter dated January 8, 2021, from [] the Township solicitors. The comment letters are attached hereto and incorporated into this decision. [A]pplicant appeared before the [] Township Planning Commission on January 11, 2021, where the Planning [C]ommission voted 5-1 to approve the text amendment subject to four conditions as outlined in the minutes of the meeting. A copy of the minutes is attached hereto and incorporated into this decision. [A]pplicant appeared before the Board [] on January 26, 2021, to request the Board schedule a public hearing to consider the text amendment. Again, several residents appeared to testify in opposition to the proposed text amendment and proposed warehouse. The Board [] then voted 4-1 to deny the text amendment. The minutes from the January 26,

12

2021 meeting are attached hereto and incorporated into this decision as Exhibit "D".

Prior versions of the plan provided for a warehouse use in an identical or nearly identical footprint. The sewer planning calculations and [TIS] both still utilize assumptions for a warehouse use. The Board [] believes this is no more than a way to back-door a warehouse[-] type facility into the RCO [D]istrict where the use is not permitted and has been repeatedly denied for the site twice in the past. The Board [] after reviewing the plan determines the plan shows a warehouse which is not a permitted use in the RCO [D]istrict and the plan is therefore denied for this reason.

R.R. at 1645a-46a.

Under the Subdivision section, the Board noted the deficiency in the sewer planning module, as follows:

Planning module or exemption must be approved by the Township and DEP (SALDO 611.01). Provide []DEP code number referencing the approved planning module (SALDO 403.1.f). Provide sewage calculations for review to verify the proposed sewage flows. Additional justification must be provided for the sewer flows provided on the mailer. Provide reference to planning module approval [number] on the cover sheet. The proposed sewage calculations are for a warehouse use which is not a permitted use under the [Z]oning [O]rdinance. Therefore, [A]pplicant has failed to provide adequate sewage calculations. The plan is denied for this reason.

R.R. at 1647a.

Under the Transportation section, the Board provided several reasons for its denial based on the TIS, including the following:

Further, the existing [TIS] utilizes ITE Land Use Code 150 (warehouse use), and [A]pplicant has voluntarily changed the plan to reference an Industrial Use. [A]pplicant has indicated [he] will submit a revised [TIS] regarding the

13

warehouse, but ha[s] failed to do so, which is a further reason for denial of the plan.

R.R. at 1651a.

Applicant appealed the Board's April 28, 2021 decision to the trial court. On March 2, 2023, the trial court heard arguments from the parties and took no additional evidence. Trial Ct. Op. 6/19/23 at 2. The trial court denied Applicant's appeal and affirmed the Board's decision in a 25-page opinion. The trial court addressed the following issues: whether the Board's denial of the SALDO Application lacked legal justification and whether the Board acted in bad faith when it denied the SALDO Application. *Id.* at 17. The trial court concluded that the Board did not abuse its discretion in denying the SALDO Application, and that the Board did not act in bad faith. The trial court focused, as did the parties, on Applicant's proposed use of the Property and concluded that substantial evidence supported the Board's finding that Applicant proposed a warehousing use that was not permitted in the RCO District under Section 209.2.E.1.b of the Zoning Ordinance. *Id.* at 20. The trial court opined as follows:

> Here, the [Board] determined that [A]pplicant's plan did not comply with all objective provisions of the applicable [Z]oning [O]rdinance, not seeking a permitted use, for instance. The [Board] issued a decision that specified the defects, described the requirements that had not been met, cited the relevant provisions of the [SALDO Ordinance] relied upon, and offered reasons for rejecting [A]pplicant's plan that were not vague. Thus, because the decision complied with [Section] 508(2) of the MPC,[6] even if one of the [Board's 24] cited reasons is supported by substantial evidence, the denial will stand. It appears to this court that at least one of the [Board's 24] cited

---

[6] Section 508(2) of the MPC, 53 P.S. §10508(2), requires that the Board's denial specify the defects, describe the requirements that were not met, and cite the provisions of the statute or ordinance upon which it relied.

14

reasons is supported by substantial evidence. It appears that there was substantial evidence for the [Board] to find that [A]pplicant has not proposed a use that is permitted in the RCO [D]istrict. Based on [A]pplicant's lack of details regarding the light industrial use claimed, the calculations flagged that were consistent with warehousing, the text amendment submitted to permit the warehousing use in the RCO [D]istrict, after having attempted to have the [P]roperty rezoned to permit warehousing, the [Board] determined that one of the reasons that [A]pplicant's plan should be denied was that [A]pplicant's use was not permitted.

*Id.*

The trial court acknowledged and rejected Applicant's argument that because the terms "storage" and "wholesaling" appear in Section 209.2.E.1.b of the Zoning Ordinance, that a warehousing use should be permitted in the RCO District, even though the term "warehouse" does not appear in that section. The trial court noted that "warehouse" is defined in Section 114.C.263 of the Zoning Ordinance as "[a]n industrial use of a building or group of buildings primarily used for indoor storage, transfer and distribution of products and materials, but not including retail uses or heavy equipment washing, servicing and/or repair, unless such uses are specifically permitted in that zoning district." Trial Ct. Op. 6/19/23 at 7; R.R. at 2114a. "Storage" is defined in Section 114.C.243 of the Zoning Ordinance as "[a] function involving the depositing of materials, goods, products or combination thereof, for safekeeping." Trial Ct. Op. 6/19/23 at 7; R.R. at 2111a. "Wholesale" is defined in Section 114.C.267 of the Zoning Ordinance as "[a]ny distribution procedure involving persons who, in the normal course of business, do not engage in sales to the general public." Trial Ct. Op. 6/19/23 at 7; R.R. at 2114a. Further, the trial court noted that although "warehousing and wholesale trade establishments" are a permitted use in the General Industrial zoning district (I District) under Section

15

211.2 of the Zoning Ordinance, subject to the conditions outlined in Section 525.61 of the Zoning Ordinance, this use is not permitted in the RCO District. The trial court opined that

> [i]t is not clear why [A]pplicant embarked on an effort to equate the warehousing use permitted in the [I D]istrict with the RCO [D]istrict, parsing definitions from different parts of the [Z]oning [O]rdinance, asserting vagueness, and drafting a text amendment to expressly permit warehousing if his intended use was, indeed, light industrial.
>
> * * * *
>
> Yet, looking to see what's permitted in other districts and jumbling definitions together appears to be exactly what [A]pplicant did concern himself with, by looking at a different district where warehousing is permitted and comparing it to the RCO [D]istrict where warehousing is not permitted and by approaching the Township with the argument that warehousing is essentially already allowed in the RCO [D]istrict. [A]pplicant's pursuit of a text amendment to expressly allow a warehousing use in the RCO [D]istrict only contributed to the [Board's] belief that [A]pplicant was actually proposing a warehousing use, while claiming to propose a light industrial use.

Trial Ct. Op. 6/19/23 at 10. The trial court further opined that Applicant's failure to specifically state the nature of his proposed light industrial use, and his continued use of warehousing codes in the sewer planning calculations and TIS, supported the Board's determination that Applicant was proposing a warehousing use, and not a light industrial use. *Id.* at 4-5, 11-16.

As to the Township's bad faith, the trial court stated that the Township worked with Applicant over the course of seven months, reviewed and commented on four versions of the SALDO Application, and determined that substantive deficiencies remained as of April 2021, when Applicant submitted his final revised

16

SALDO Application. Trial Ct. Op. 6/19/23 at 24. The trial court agreed with the Township, that under *Kassouf v. Township of Scott*, 883 A.2d 463 (Pa. 2005), "good faith does not require providing an applicant with infinite opportunities to remedy defects." *Id.* at 23. Accordingly, the trial court "does not find that the [Board] acted in bad faith in denying [A]pplicant's latest revised plan." *Id.* at 24. Applicant timely appealed the trial court's order to this Court.

On appeal,[7] as to the first issue, Applicant argues that the Board lacked legal justification to deny the SALDO Application that proposed to develop the Property with a light industrial use, and that its reasons for denial are not supported by substantial evidence. Importantly, although Applicant continues to reference definitions in the Zoning Ordinance to support its contention, he does not argue that the Board committed legal error in interpreting the Zoning Ordinance, but, rather, that the Board abused its discretion by denying the SALDO Application for reasons not supported by substantial evidence. Applicant argues that the Board erred when it improperly ignored Applicant's explanation that the proposed use would be limited to the permitted uses in the RCO District, without identifying the specific use. Applicant argues that the Board's conclusion that Applicant's intended use was warehousing was based on a suspicion of an impermissible use, rather than relying on evidence in the record. Applicant also argues that the remaining reasons asserted

---

[7] When, as here, the trial court took no additional evidence, this Court's review is limited to determining whether the Board abused its discretion or erred as a matter of law. *Allegheny Tower Associates, LLC v. City of Scranton Zoning Hearing Board*, 152 A.3d 1118, 1121 n.3 (Pa. Cmwlth. 2017). A board abuses its discretion if its findings are not supported by substantial evidence in the record. *Callowhill Center Associates, LLC v. Zoning Board of Adjustment*, 2 A.3d 802, 806 n.3 (Pa. Cmwlth. 2010). Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (citations omitted). On the issue of whether the Township acted in bad faith, this Court's review is limited to determining whether the trial court abused its discretion or erred as a matter of law. *1050 Ashbourne Associates, LLC v. Cheltenham Township Board of Commissioners*, 167 A.3d 828, 837 (Pa. Cmwlth. 2017).

by the Township do not justify denial of the SALDO Application. The Township responds that substantial evidence supports its denial, based on Applicant's failure to identify a specific permitted use, his repeated efforts to amend the Zoning Ordinance, and his continued reference to "warehousing" in the sewer flow and TIS calculations.

The following authorities will assist in our analysis of this issue. We note that when a plan complies with all "objective provisions" of the applicable ordinance or applicable regulation, the plan must be approved. However, denial of a plan may stand if validly supported by even one reason. *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 168-69 (Pa. Cmwlth. 1993)(citations omitted). We further note that the party seeking approval of a land development plan bears the burden to show it is entitled to approval, *see Ball v. Montgomery Township Board of Supervisors*, 598 A.2d 633, 637 (Pa. Cmwlth. 1991), and that the Township is entitled to deference in interpreting its ordinances. *See Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).

In *Delchester Developers, L.P. v. London Grove Township Board of Supervisors*, 161 A.3d 1106 (Pa. Cmwlth. 2017), our Court considered whether substantial evidence supported the board's denial of the applicant's SALDO application. Although the Court agreed that mere technical deficiencies that could be easily cured did not support the denial, "the presence of inadequate independent grounds for denial does not vitiate the legitimate substantive grounds for denial" identified by the board. *Id.* at 1113. The Court upheld the board's denial because it was "clear that [the applicant's plan] does not comply with substantive and objective requirements of the applicable ordinances." *Id.* "Where a preliminary plan contains clear substantive issues of noncompliance with a township's SALDO or other

18

applicable ordinances, the governing body is within its discretion to deny the plan." *Id.*

In addition to the Zoning Ordinance provisions already discussed, we note that "use" is defined in Section 114.C.260 of the Zoning Ordinance as

> [t]he purpose, activity, occupation, business or operation for which land or a structure is designed, arranged, intended, occupied or maintained. Uses specifically include but are not limited to the following: activity within a structure, activity outside of a structure, any structure, recreational vehicle storage or parking of commercial vehicles on a lot.

R.R. at 2113a.

Here, we conclude that Applicant's SALDO Application failed to comply with Section 209.2.E.1.b of the Zoning Ordinance because the proposed warehousing *use* is not permitted in the RCO District. It is the function of the Board to determine whether the evidence satisfies the criteria for denying the SALDO Application. "The [board], as fact[]finder is the sole judge of credibility." *Omatick v. Cecil Township Zoning Hearing Board*, 286 A.3d 413, 430 (Pa. Cmwlth. 2022) (citations omitted). The board has exclusive authority to determine matters of witness credibility and weight. *Id.* (citations omitted). Here, the Board found that Applicant's insistence that his proposed use would be limited to a permitted light industrial use was not credible based on his inability or refusal to identify a specific light industrial use, repeated attempts to amend the Zoning Ordinance to permit warehousing in the RCO District, and use of warehousing land use codes to calculate sewer flow and traffic needs associated with the project. Applicant does not dispute these facts but argues that the Board erred by failing to credit Applicant's statements that he would limit the project to a permitted use, even though he failed to specify the permitted use. Applicant further contends that the Board misinterpreted his

19

efforts to amend the Zoning Ordinance and misinterpreted the use of warehousing land use codes in his sewer and traffic calculations. However, the Board has exclusive authority to determine matters of witness credibility and weight. *Omatick*, 286 A.3d at 430. Further, in reviewing decisions of the board, this Court should not act as a "super zoning board of adjustment [or board] and impose its own preference on local municipalities." *Kadi v. Zoning Hearing Board of the Township of Lynn*, 457 A.2d 1042, 1044 (Pa. Cmwlth. 1983). Because we affirm the Board's denial based on Applicant's failure to comply with the objective requirements of Section 209.2.E.1.b of the Zoning Ordinance, and with Section 611.01 of the SALDO Ordinance, we need not address Applicant's other assertions of error in the Board's denial, or the effect of the trial court's failure to address the other reasons. Denial of a plan may stand if validly supported by even one reason. *Herr*, 625 A.2d at 168-69.

As to the second issue, Applicant argues that the trial court committed an error of law when it concluded that the Board acted in good faith in denying the SALDO Application. Applicant argues that the Township engaged in multiple actions to thwart Applicant's ability to meet the legal requirements under the SALDO Ordinance, including denying the SALDO Application based on the Township Engineer's comments that were provided to Applicant on the day of the Board's meeting. The Township responds that it went to great lengths to review and respond to each revised SALDO Application over a seven-month period, including a review of the third revised SALDO Application submitted just six days before the Board's scheduled meeting, even though Section 306.06 of the SALDO Ordinance requires preliminary plans to be submitted not less than 10 days before the regular Board meeting to be placed on the agenda. The Township further responds that

20

Applicant refused to correct certain deficiencies in each revision, and that Applicant is not entitled to infinite opportunities to revise his plan.

To determine whether the trial court erred when it concluded that the Board did not act in bad faith, we examine relevant case law that discusses a municipality's duty of good faith. This Court has established that a municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. "The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with the applicant, and providing the applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion." *Delchester*, 161 A.3d at 1115-16 (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977)). In *Delchester*, 161 A.3d at 1116, this Court reviewed case law including *Raum*, *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009), *Abarbanel v. Solebury Township*, 572 A.2d 862 (Pa. Cmwlth. 1990), and *Herr*, to further outline what constitutes good faith and bad faith in the review process. In *Highway Materials*, 974 A.2d at 544-55, this Court held that when a municipality refuses to advise an applicant on how to cure plan deficiencies, and to advise an applicant on its interpretations of its ordinances, the municipality will be found to have acted in bad faith. In *Abarbanel*, 572 A.2d at 865, this Court held that where a municipality reviewed plans in good faith, highlighted the plans' deficiencies, and gave the applicant an opportunity to cure those deficiencies, the municipality did not act in bad faith. Further, in *Abarbanel*, this Court held that an applicant has a reciprocal good faith duty to submit revised plans in a reasonable and timely manner so that the municipality can comply with its duties under Section 508 of the MPC. *See id.*

21

at 864. Finally, in *Delchester*, 161 A.3d at 1116, this Court held that the municipality acted in good faith by granting numerous extensions at the applicant's request, and by granting waivers, although the applicant failed to correct issues of noncompliance with relevant ordinances during the four-year review process.

In addition, in *Kassouf*, 883 A.2d 463, our Supreme Court considered whether the township acted in bad faith in reviewing the applicant's SALDO plan. The Court determined the applicant had been given "ample, multiple opportunities to correct the defects in his plan" in time to meet the township's deadline, "but failed to do so." *Id.* at 476. The Court opined that

> there is no existing basis in law to suggest that a developer is entitled to infinite opportunities to address and remedy the defects in a [SALDO] plan. While reciprocal actions taken in good faith are required of the parties, a reciprocal good faith standard cannot simply eliminate the inherent discretionary powers of a municipality in this area. [The applicant's] plan raised multiple issues related to noncompliance with ordinances, and [the applicant] was made aware of those defects on a number of occasions between July and October of 2000. That he failed to adequately address them all prior to [the township's] deadline, does not establish bad faith on the part of the township in electing to act without granting him additional time to address the defects.

*Id.*

After careful review of the record, we conclude that the trial court did not err in determining that the Board did not act in bad faith in denying Applicant's SALDO Application. The trial court reviewed the record and determined that the Township reviewed each revised SALDO Application and provided detailed comments on each SALDO Application so that Applicant could correct the deficiencies, even for the SALDO Application submitted only six days before the

22

Board meeting. We agree with the trial court that the facts presented here are analogous to those presented in *Kassouf*, 833 A.2d at 476, and that Applicant is not entitled to "infinite opportunities to address and remedy the defects in a [SALDO] plan." Here, Applicant failed to adequately address the proposed use for the Property in each SALDO Application and failed to file a revised TIS with his third revised SALDO Application. We discern no error in the trial court's conclusion that it "does not find the [Board] acted in bad faith in denying [A]pplicant's latest revised plan." Trial Ct. Op. 6/19/23 at 24.

Accordingly, we affirm the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chris Haring,                          :
                                       :
                 Appellant             :
                                       :
            v.                         : No. 731 C.D. 2023
                                       :
Newberry Township                      :

# **O R D E R**

AND NOW, this 15<u>th</u> day of <u>July</u>, 2024, the order of the York County Court of Common Pleas dated June 16, 2023, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge